The complaint, in substance, alleges that Carl Thayer, Jr., is a minor, without guardian, and Mamie O. Hall has been duly appointed his next friend by the court. That Carl Thayer, the defendant is the father of Carl Thayer, Jr., born out of wedlock, Mamie O. Hall being his mother. That the defendant, Carl Thayer, "contracted with the mother of the plaintiff (Mamie O. Hall), that he would support plaintiff and educate him, all of which he has failed to do; that the support and education of the plaintiff would reasonably cost $50.00 per month; that the defendant, as plaintiff is informed and believes, is worth more than $40,000 and well able to support and educate the plaintiff. That the plaintiff should have allotted for his support at least the sum of $50 per month, this amount to be used for his support and education." *Page 503 
Defendant in his answer admits that Carl Thayer, Jr., is a minor. Denies he is the father of Carl Thayer, Jr. Denies the agreement to support and educate him. Defendant, for a further defense, says: (1) If any promise had been made it is barred by the three-year statute of limitation and pleads same; (2) pleads C. S., ch. 6 "Bastardy," the method prescribed by law to establish paternity and the three-year statute of limitation (C. S., 274), Carl Thayer having been born in the year 1914.
In an amended answer, defendant alleges that Mamie O. Hall, mother of Carl Thayer, Jr., after she became of age, indicted defendant for seduction under promise of marriage, and a settlement was made to include all civil liability and in full of all damages due her on account of any alleged seduction, bastardy, and any civil claim, and a written receipt to this effect was signed by Mamie O. Hall. That prior to the indictment the defendant had paid Mamie O. Hall $1,000 in full settlement of all civil liability claimed by her against defendant.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Is the plaintiff the illegitimate child of the defendant as alleged in the complaint? Answer: `Yes.'
"2. Did the defendant, Carl Thayer, prior to the birth of the plaintiff contract to and with Mamie Hall, the mother of the plaintiff, to take care of the plaintiff and educate him? Answer: `Yes.'
"3. If so, has the matter been compromised and settled by and between the said Mamie Hall and the defendant? Answer: `No.'
"4. Has the bastardy proceedings ever been had establishing the paternity of the plaintiff? Answer: `No.'
"5. Has more than three years elapsed since plaintiff's birth? Answer: `Yes.'
"6. Is plaintiff's cause of action on the contract, barred by the statute of limitation? Answer: `No.'"
The judgment of the court below on the verdict was as follows:
"His Honor holding as a matter of law that the plaintiff has no cause of action on the grounds found in the first issue, since no bastardy proceedings has ever been had under the statute, but that the plaintiff is entitled to support under the issues as found by the jury, and the court further finding as a fact that this suit had been pending for 18 months, and that the defendant has paid in the sum of $100 and that $350 is a reasonable amount to be paid since the action has been pending, and that $25 a month is a reasonable amount to be paid hereafter for the benefit of plaintiff until some further order is made.
It is, therefore, considered, ordered and adjudged that the plaintiff contracted with Mamie Hall, mother of the plaintiff, in December, 1913, *Page 504 
to take care of the plaintiff and educate him as found by the jury, and the court further adjudges and orders that the defendant pay to the court, or to some guardian for the plaintiff, the sum of $350 for the benefit of the plaintiff to the present, and that from the present time on until the further order of the court that he pay to the clerk of the court of Davidson County, or a guardian if he shall have one appointed, the sum of $25 per month. It is further ordered and adjudged that the plaintiff recover its costs of the defendant to be taxed by the clerk.
It is further adjudged that this judgment is a lien on all the lands owned by the defendant in Montgomery and Scotland counties, but since defendant may want to sell his timber it is understood and agreed that it is not a lien on the timber on the 450-acre Coggins tract, and that he shall have a right to dispose of same if he should so desire, and this cause is retained on docket for further order."
There are 24 exceptions and assignments of error by defendant. The material assignments of error and necessary facts will be considered in the opinion.
This case was before this Court — 187 N.C. 573 — on the question of venue.
This is an action brought by an illegitimate child, under age, by his next friend, his mother, to enforce an alleged contract made by his mother to compel the reputed father to support and educate him. The jury found that the plaintiff, Carl Thayer, Jr., was an illegitimate child of Carl Thayer, who had contracted with Mamie O. Hall, his mother, prior to his birth, to take care of and educate him. All the issues, as appear in the record, were found against defendant.
The court below construed the complaint as alleging two causes of action: (1) To establish paternity (2) for breach of contract. The court below submitted the first issue as to paternity of plaintiff over objection and protest of defendant. But, the court held in the judgment, as a matter of law, that plaintiff could not maintain his cause of action embraced in the first issue. The plaintiff has not appealed. No appeal having been taken by plaintiff as to the first cause of action, if there was one under the pleadings, this case is res judicata. We think that on all the issues found against the defendant, the evidence was competent, and the charge of the court was in accordance with law.
We will only deal with the law in reference to the second cause of action — "For breach of contract." *Page 505 
The defendant contends that "As to the second cause of action the plaintiff alleges a contract made with his mother six months before he was born. Such a contract must be supported by sufficient or meritorious consideration. What consideration is there moving from the plaintiff in this action to the defendant? None whatever. Love and affection for an illegitimate child is not a meritorious consideration for the reputed father." The contention of defendant cannot be sustained, from the evidence of Mamie O. Hall (who was married to one Godwin last July), and to whose testimony the jury gave credence. She testified, in substance, that she had one child, Carl Thayer, Jr., who was 11 years old — born 7 June, 1914. That she had known defendant practically all her life and they lived in the same vicinity and for years they went with each other. In 1913, the defendant had connection with her several times — more than four in the month of September and October. She had nothing to do with any other man, and was about 17 years old at the time. The plaintiff, Carl Thayer, Jr., was born 7 June, afterwards, and the defendant is his father. "I next saw defendant in December, along about the 18th of December, at my father's home. He came and talked with me about the child, and I told him my condition. He said he would take care of this child. Said he would marry me, and take me to Virginia where his work was next year, and I should not be left. He promised to marry me in 1913, when he found out my condition. He said, we will marry 23 December, and that he would take this child and take care of him. My mother heard him say this. That he would support the child and care for him and educate him comfortably. Defendant said, `You know my property is here, and my father is here and is old and I cannot afford to go away and leave you, and will take care of you and the child with my property.' This was before the child was born."
The entire evidence shows that after the agreement of defendant was made, the cohabitation ceased. Under the facts found by the jury, the single question presented here was the agreement supported by sufficient or meritorious consideration. At the time the promise was made, Mamie O. Hall (now Godwin) was with child. Defendant was the reputed father and promised to marry her, the marriage to take place 23 December. The child was born afterwards on 7 June. If this promise had been fulfilled, Carl Thayer, Jr., would have been a legitimate child. By both the civil and canon law the subsequent marriage of the parents legitimized their offspring born before marriage. 1 Black Com., 454; Fowler v. Fowler, 131 N.C. p. 169. He would have had inheritable blood. By Laws 1917, ch. 219, sec. 1, C. S., 279, subsequent marriage now makes the illegitimate child legitimate, with all the rights as if born in lawful *Page 506 
wedlock. At the time the promise was made, the law gave the mother certain rights, C. S., 267, and if under said section the paternity of the child was established "then he shall stand charged with the maintenance thereof, as the court may order, and shall give bond, with sufficient surety, payable to the State, to perform said order, and to indemnify the county, where such child is born, from charges for his maintenance, and may be committed to prison until he finds surety for the same, and shall be liable for the costs of the issue or proceeding."
This is a civil action — Richardson v. Egerton, 186 N.C. 291. Defendant promised to do for the child what the mother could make him do under the law — maintain him. The promise made was to do this and further to educate the child. Under our school law, children of certain ages are required compulsorily to attend school. C. S., 5758. S. v.Johnson, 188 N.C. 591. There was nothing in the promise that was contrary to law or founded on an immoral consideration. It was a natural obligation. Consideration of marriage is a valuable consideration (although not alleged but in evidence, without objection), and a consideration based on the right of the mother, under C. S., 267, to force by law maintenance. Defendant never fulfilled his promise of marriage, nor did he maintain and educate the child. The mother had to go through the agony of child-bearing, suffer the wrong. The marriage promise he failed to live up to would have helped cleanse the sin, but his failure has kept her sin ever before her. "For I acknowledge my transgressions and my sin is ever before me." Ps. 51, v. 3. Carl Thayer, Jr., now asks that this contract on his behalf to maintain and educate him be carried out by the court. Defendant pleads nudum pactum
— a promise without consideration, unenforceable. Under the facts and circumstances of this case, we cannot so hold. The promise was based on a sufficient and meritorious consideration. We think not only the weight of authority is with the plaintiff, but justice. No mortal can tell the mental and bodily suffering the young 17 year-old girl went through in the birth of this child, the disgrace, the alienation of friends and kindred. Defendant should fulfill his obligation to educate and maintain the child — the wages of his wrong. Retribution has come after long years, but it has come — nemesis.
 "Retribution follows wrong Tho the execution tarry long."
The child is under age, and the statute of limitation not applicable.
In Doty, Admr. v. Doty, Guardian, 118 Ky., p. 204, where a similar contract, as in the instant case, was upheld, the attorneys of appellee in their brief so well stated the equity of this case, as set forth in the *Page 507 English case, that we repeat: "In England nearly two hundred years ago one of the `nobility' misled an innocent young woman and had a son by her. He lived with her for a little while, but afterwards married another woman. But before doing so he executed a bond in which he promised to give the boy at his death $10,000 and died. Suit was brought upon his bond by the mother for the boy in the high Court of Chancery, and a motion was made to dismiss it upon the ground, `that it being a matter of turpitude, equity would not meddle and should not lend assistance.' The Lord Chancellor substantially said: `Turpitude consists in the doing of the wrong and not in making reparation.' So we say, this is a case of doing justice — making amends for wrong done to the innocent. Justice is clean and appeals to the highest of all courts. To do justice — to make reparation for wrong done — requires the exercise of the highest function of this Court, and that for which it was established. In that case the chancellor gave the mother judgment for the amount due the child, and the findings was approved by the House of Lords."
Nearly one hundred years ago, Taylor, C. J., in Kimbrough v. Davis,16 N.C. p. 75, said: "The natural obligation of a parent to maintain his illegitimate offspring, cannot be doubted. (Puffend, 6, 4, ch. 11, sec. 6.) . . . `Past seduction (says Chancellor Kent) has been held a valid consideration to support a covenant for pecuniary reparation; and the innocent offspring of a criminal indulgence, has a claim to protection and support, which Courts of Equity cannot and do not disregard.'" Brown v.Kinsey, 81 N.C. p. 245 and cases cited.
The Kimbrough case was cited and approved in Sanders v. Sanders,167 N.C. p. 318: "There can be no controversy that the father is under a legal as well as a moral duty to support his infant children (Walker v. Crowder,37 N.C. 487), and, if he has the ability to do so, whether they have property or not. Hagler v. McCombs, 66 N.C. 345. There is a natural obligation to support even illegitimate children which the law not only recognizes, but enforces. Burton v. Belvin, 142 N.C. 153; Kimbrough v.Davis, supra."
"At common law the father is under no legal obligation to maintain his illegitimate children, for as has been seen, in the eye of the common law, an illegitimate child has no father, but is regarded as nulius filius. But the father is liable on an express promise to pay for support andmaintenance to be furnished to his illegitimate children (italics ours), and on an implied contract to pay therefore where he has adopted the child as his own, and acquiesced in any particular disposition of it." Tiffany's Persons and Domestic Relations (2 ed.) p. 249. For the position, Mr. Tiffany cites Burton v. Belvin, 142 N.C. supra. In the note he says: "An agreement by a man to pay for the maintenance of *Page 508 
children which may result from future illicit cohabitation is void, because of its immoral tendency. Clark, Cont., 439; Crook v. Hill, 3 Ch. Div., 773. But such an agreement as to children already born, or as to a child inventre sa mere, is valid; the illicit intercourse in such case being past. Clark, Cont., 439; Crook v. Hill, 3 Ch. Div. 773. The moral obligation of a father to support his illegitimate children is a sufficient consideration for his bond to do so. Trayer v. Setzer, 72 Neb. 845, 101 N.W. 989."
There are cases to the contrary, such as Nine v. Starr, 8 Oregon Rep., p. 49, holding there is no legal obligation, but there was no statute imposing a legal obligation, as in this State, requiring the father under the Bastardy Act to maintain the child, nor was there any promise to marry the mother. In fact, in Sponable v. Owens, 92 Mo., Appeal Rep., p. 174, there was a promise to marry (a valuable consideration) coupled with a promise to support the illegitimate child — similar to this case. It is there held, p. 178: "The agreement to marry is not alone a consideration supporting an action for failure to marry, but it is a consideration upon which other lawful agreements may be based. It is not unlawful for a father to support, or agree to support, or agree to provide for the support of his illegitimate child; and no reason can exist why he should not be allowed to legally bind himself in a contract with the mother of the child. It is but necessary that there be a legal consideration, and we are of the opinion that an agreement between the two to marry is sufficient."
The suit is properly brought. We said in Parlier v. Miller,186 N.C. p. 503: "We deduce from the authorities that it is well settled that where a contract between two parties is made for the benefit of a third, the latter may sue thereon and recover, although not strictly a privy to the contract." Bank v. Assurance Co., 188 N.C. p. 753.
Defendant further contends: "This cause of action is brought for breach of contract and plaintiff's proper remedy, if any he has, is for damages to be passed on by a jury and not the relief asked for in the complaint, nor the relief granted by his Honor."
We think by analogy to the action of the Court in Sanders v. Sanders,supra, p. 317, that the judgment of the court below was proper. The facts were established by the jury. On the entire record, we can discover in law,
No error. *Page 509