# MOSS v. UNITED STATES.

COURTS; BASTARDY; STATUTES; REPEAL; JUVENILE COURT.

1. The juvenile court of this District has no power to punish the father of
   a bastard infant for refusing to support and maintain it.  (Construing
   acts of Congress of February 13, 1885, chap. 58,   23 Stat. at L. 302;
   July 26, 1892, chap. 250, 27 Stat. at L. 268; March 3, 1901, chap. 847,
   31 Stat. at L. 1095; March 19, 1906, chap. 960, 34 Stat. at L. 73; and
   March 23, 1906, chap. 1131, 34 Stat. at L. 86.)
2. A statute providing for the punishment of "any person" who shall neg-
   lect to provide for any child under fourteen years of age, of which

**D. C.]** Syllabus.

he or she shall be the parent, and which he or she shall be able to support, applies only to parents of lawful children, and not to parents of bastards. (Construing act of Congress of March 3, 1901, chap. 847.)

3. In construing a statute it is the duty of the court to ascertain the meaning of the legislature from the words used and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words import, if the court is satisfied that the literal meaning of the language would extend the statute to cases which the legislature never designed to embrace in it.

4. Repeals by implication are never favored; so that, where Congress has expressly legislated in respect to a given matter, such legislation must control in the absence of subsequent conflicting legislation equally express. (Following *United States* v. *Sampson,* 19 App. D. C. 435, and *McCarthy* v. *McCarthy,* 20 App. D. C. 195.)

5. Statutes enacted at the same session should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia.*

6. *Quœre,* whether the provision of the act of Congress of March 3, 1901, requiring parents and guardians to support minor children until they attain fourteen years of age, is not repealed by the provision of the act of March 23, 1906, punishing a person who neglects to provide for his wife, and minor children under sixteen years of age.

7. For all offenses against the District of Columbia and against the United States within the jurisdiction of the juvenile court, the prosecution should be on information by the corporation counsel, and in the name of the District of Columbia or the United States, as the case may be.

No. 1743. Submitted January 19, 1907. Decided March 5, 1907.

In error to the Juvenile Court of the District of Columbia (trial by jury having been waived) in a prosecution for failure to support and maintain a child of which the accused was alleged to be the father.  ` `                                *Reversed.*

The facts are stated in the opinion.

*Mr. Fountain Peyton* and *Mr. John A. Moss, Sr.* for the plaintiff in error.

*Mr. E. H. Thomas,* Corporation Counsel, *Mr. D. W. Baker,* United States Attorney for the District of Columbia, and *Mr. Frank Sprigg Perry,* Assistant United States Attorney, for the defendant in error:

1. The act of March 3, 1901, punishes the neglect of a parent to provide food, clothing, and shelter for his child, whether the child be legitimate or not.

The language of the act of March 3, 1901, in sec. 4, refers to any person who shall be the parent or guardian of a child, and in sec. 5 is directed against the father and mother of such child. This act was passed for the protection of all children, legitimate and illegitimate, and includes all parents, whether their children be legitimate or not. *Macklin* v. *Taylor,* Addison (Pa.) 212. "Parent" is a broader term than "father," and may embrace "father" and "mother." *Lanznester* v. *State,* 19 Tex. App. 320. The best interpretation of the word "father" in the District of Columbia is obtained by reference to the laws of the District. In the act of 1781, chap. 13, of Maryland, which was in force in this jurisdiction at one time, and which related particularly to bastards, the word "father" is used when speaking of the male parent of the bastard. See *United States* v. *Collins,* 1 Cranch, C. C. 592. The word "father" has been widely used in other jurisdictions to mean the same thing. *Com.* v. *Shepherd,* 6 Binn. 288; *State* v. *Savin,* 80 Iowa, 560; *Daffies* v. *State,* 7 Wis. 568; *Glidden* v. *Nelson,* 15 Ill. App. 297, 300; *Simmons* v. *Bull,* 21 Ala. 501; *Marlett* v. *Wilson,* 30 Ind. 242; *State* v. *Phelps,* 9 Md. 21, 27; *Wilson* v. *Babb,* 18 S. C. 59, 69.

What is said here is sufficient to dispose of the objection to the information that it does not show that the child was legitimate, for, if the act of 1901 includes illegitimate children, it is not necessary to show in an information whether the child is legitimate or illegitimate. The information follows closely the wording of the act, and the act does not require that the allegation of legitimacy should be made.

2. Evidence of the resemblance of a child to the putative

father which was admitted by the trial court, has been held competent. *Wright* v. *Hicks,* 15 Ga. 160; *Jones* v. *Jones,* 45 Md. 144, 152; *Scott* v. *Donovan,* 153 Mass. 378; *Finnegan* v. *Dugan,* 14 Allen, 197; *Gilmartin* v. *Ham,* 38 N. H. 108; *Grant* v. *State,* 50 N. J. L. 490; *State* v. *Woodruff,* 67 N. C. 89; *Crow* v. *Jordan,* 49 Ohio St. 655.

Mr. Justice McComas delivered the opinion of the Court:

John A. Moss, Junior, the plaintiff in error, upon an information in the juvenile court of this District, sworn to by Georgie Washington, on October 20, 1906, was charged with being the father of a minor child, Wilbur Washington, twenty-three months old, and with having refused and neglected to provide such food, clothing, and shelter as to prevent the suffering and secure the safety of said child. At the trial, Georgie Washington testified that Moss was the father of her illegitimate male child then two years old. Moss denied this paternity, and also denied cohabitation with the mother of the child. This case was tried before the judge of the juvenile court, Moss having waived a jury trial, and the defendant was found guilty and was sentenced to pay a fine of $100, and in default to be imprisoned three months in the workhouse, with the direction that the fine, if paid, be turned over to the mother for the support of said minor child. There were several exceptions, which we need not consider, because we think the court below erred in refusing to grant the plaintiff's motion to dismiss the case for want of jurisdiction.

A salutary law, the Maryland act of 1781, chap. 13, long in force in this District, empowered a justice of the peace to require a female person having an illegitimate child to indemnify the county from any charge on account of such child unless she on oath discovered the father, who was required to indemnify the county from all charges for the maintenance of such child. The statute gave an appeal to the person charged with being the father of a bastard child, when aggrieved by such a judgment. This statute is still in force in Maryland, and

very many States have similar statutes. The judgment of the judge of the juvenile court here appealed from in effect is that the acts of Congress we will now refer to, taken all together, have restored the old Maryland bastardy act. We regret to conclude that this judgment cannot be sustained, for the juvenile court has no power to require this man charged by this woman with the paternity of her illegitimate child, to support it.

The act of March 19, 1906, chap. 960 [34 Stat. at L. 73], created and established the juvenile court of the District of Columbia. Upon this court was conferred original and exclusive jurisdiction of all crimes and offenses of persons under *seventeen* years of age committed against the United States, save capital and other excepted crimes, and also of all offenses of persons under *seventeen* against the laws and regulations of this District, and also power to commit or hold to bail the same class of persons in cases cognizable therein or in the supreme court of the District of Columbia. Upon the juvenile court was conferred all the powers and jurisdiction conferred by the act of February 13, 1885, chap. 58 [23 Stat. at L. 302], which authorized the Washington Humane Society to extend its operations to the protection of children as well as animals, from cruelty and abuse. The agents of this society could arrest on sight persons violating laws for the protection of children, and other like offenders, upon warrant from the police court, and could bring before that court any child subjected to cruel treatment or neglect, or any child under sixteen in a house of ill fame; "Provided, that any *parent, guardian, or near relative*" aggrieved may appeal. It was made a misdemeanor for any person to maltreat a child under eighteen years of age, or for any person having the custody of a child under fourteen to abandon it, or to dispose of or hire it for specified wrongful employments; or for any person to entice a female child into prostitution. This act, of course, in no wise contemplated the punishment of the convicted father of a bastard child.

To the juvenile court was further given original and exclusive jurisdiction of all cases involving legal punishment of chil-

dren under the act of July 26, 1892 chap. 250 [27 Stat. at L.
268], which created a board of children's guardians. Sec. 4,
the effective part of that act, gave to this board the care of
children committed under the act of February 13, 1885, sec.
2 of the act just recited; also of all destitute children, those
abandoned by their *parents or guardians,* children of unfit
parents, those begging or vicious or incorrigible when under
*sixteen years* of age and committed by the court to said board;
also children committed to this board by the reform school, and
children temporarily committed to this board pending investi-
gation. It is plain this act in no wise provided punishment for
a man accused of the paternity of a bastard child; nor do the
acts amendatory thereof in any wise relate to such an offender.
The juvenile court was also given jurisdiction of all cases un-
der the act of March 3, 1901, chap. 847 [31 Stat. at L. 1095],
(An Act to Enlarge Powers of the Courts of the District of
Columbia in Cases Involving Delinquent Children), and, con-
currently with the criminal court, the jurisdiction conferred by
this act upon the police court in the case of *parents* or *guar-
dians* who shall refuse or neglect to provide clothing and
shelter for any child under the age of *fourteen* years. The 1st
section of the act of March 3, 1901, gives to the board of chil-
dren's guardians the custody of children under *seventeen* years
committing minor offenses. The 2d forbids jail commitment
in such cases; the 3d describes duties of probation officers con-
cerning *delinquent* children; the 4th section prescribes fine
and imprisonment for *any person* who shall *neglect* to provide
for any child under the age of *fourteen* of which he or she shall
be the *parent* or *guardian,* such food, clothing, and shelter as
will prevent the suffering and secure the safety of such child;
the 5th section provides that upon hearing before any court if
the evidence tends to show that such child has a *father* or a
*mother,* either of whom is able to contribute to the support
of such child, but neglects so to do, then upon an information
in the police court charging the *father* or *mother* with such neg-
lect, upon conviction thereof the said court shall require the
*father* or *mother* to contribute by stated payments to said board

or to the support of such child such sums as the *father and mother or either of them* may be able to pay. The 6th section provides that *any person* so ordered to pay, who neglects to pay, shall be deemed guilty of contempt, and upon conviction thereof to be imprisoned; with a proviso that if after conviction any such parent shall show subsequent payment of the amount due, and give bonds for future payments, the court may suspend sentence. The two remaining sections relate to a disbursing officer, and repeal provisions of acts inconsistent with this act.

We are convinced that the terms "parent or guardian," "father or mother," "father and mother," so often occurring, cannot be construed to relate to a man charged with being the father of a bastard child; but mean lawful parents; and "that any person" means the lawful parent or guardian of such child.

The act to create a juvenile court, of March 19, 1906, proceeds to make other provisions concerning "neglected," "dependent," or "delinquent" children, and in sec. 9 defines the terms "dependent or neglected" child to mean "any child who is destitute, or homeless, or abandoned, or dependent upon the public for support, or who has not the proper *parental* care or *guardianship,* or who habitually begs or receives alms, or whose home, by reason of neglect or cruelty, or depravity of the *parents,* is an unfit place for such a child." We cannot doubt that this definition contemplates only a child having a legal guardian, or the child of a lawful mother. Secs. 10 to 23, inclusive, are concerned with the mode of prosecution and trial, matters of administration, and provisions for an appeal to this court. Sec. 24 provides that in cases where a child shall be found to be a delinquent child "the parent or parents, legal guardian, or person having the custody of such child," encouraging its delinquency, shall be guilty of a misdemeanor. This language, which in its terms mentions "legal guardian," refers to parents in lawful wedlock or to a person *in loco parentis,* and by its relation to the prior sections conclusively shows that the father of a bastard child is not within the purview of this act. The remaining sections, 25 and 26, repeal prior in-

consistent provisions, and divide expenses of the operation of the law between the District and the United States.

It is plain that the juvenile court act and the prior acts included in it, taken separately, did not contemplate the punishment of the father of a bastard child, did not deal with his offense, did not require him to pay for the support of his illegitimate child. The judge of the juvenile court erred, therefore, in concluding that by combining expressions occurring in several of these acts, which separately do not include this subject-matter, it can be made to appear that Congress intended to charge a man accused of the paternity of a bastard with the maintenance of such child. On the contrary it is, undoubtedly, the duty of the court to ascertain the meaning of the legislature, from the words used in the statute, and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words import, if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it. *Brewer* v. *Blougher*, 14 Pet. 197, 198, 10 L. ed. 417, 418.

Taken together, these statutes convince us that Congress dealt only with the neglected children born in lawful wedlock, whose parents were known, whose guardians were legal, whose custodians stood indisputably *in loco parentis.* Destitute and homeless children, without reference to parents, were committed to the board of children's guardians by the act of July 26, 1892. In this beneficent system it would have been unwise for Congress to incorporate the trial of a disputed paternity, and thereby delay the commitment of children to the care of the board of guardians. We fully agreed that the juvenile court should have power upon conviction to compel the father of an illegitimate child to maintain his child. Unhappily, the old bastardy act is no longer in force, the Code failed to revive it, and until Congress gives such power to the judge of the juvenile court, this court cannot affirm such a judgment as this.

Counsel for appellant insists that this prosecution was brought under the act of March 3, 1901, providing, among other things, for the maintenance of minor children, by their parents or

guardians until they attain the age of *fourteen* years, and this provision was repealed by the act of March 23, 1906 [34 Stat. at L. 86, chap. 1131], which provides for the maintenance of children of *sixteen* years of age, changes the rule of evidence in respect of husband and wife, and changes the penalties and provides for the punishment of a person who fails to support his wife or his or her minor children. As we have concluded that this judgment must be reversed because the other acts concerned do not include the offense charged against the appellant, it is unnecessary to decide whether or not Congress on March 23, 1906, intended to repeal a portion of the act of March 19th of the same year, establishing a juvenile court, which incorporated the part of the act of March 3, 1901, that compelled parents or guardians to provide food, clothing, and shelter for a child under the age of *fourteen* years. It is true the act of March 23, 1906, chap. 1131, "An Act Making it a Misdemeanor in the District of Columbia to Abandon or Wilfully Neglect to Provide for the Support and Maintenance by Any Person of His Wife, or of His or Her Minor Children in Destitute or Necessitous Circumstances," strongly confirms our conclusion that in this field of legislation Congress has designedly avoided confusion by omitting the case of a father who would usually dispute the paternity of a bastard child, and thereby delay speedy disposition of the child. It is plain that this act deals directly with a lawful father or mother of such children, for in terms it punishes a person who neglects to provide for his wife, or *minor children* under *sixteen* years of age.

Were it necessary for us to decide whether or not the provision of the act of March 3, 1901, upon which the information was based, whereon the judgment in this case was grounded, was repealed by the act of March 23, 1906, we would be slow to reach such conclusion, but we need not prolong this decision to discuss a matter which it is unnecessary to determine. Repeals by implication are never favored, and are never supposed to be intended except where the provisions of the prior and subsequent statutes are immanifest and in irreconcilable conflict. No statute will be construed as repealing a prior one, unless so

clearly repugnant thereto as to admit of no other reasonable construction. .And the principle of construction is well settled that repeals by implication are never favored, unless conflict or repugnancy is manifest. Where Congress has expressly legislated in respect to a given matter, that express legislation must control, in the absence of subsequent legislation equally express, and is not overthrown by any mere inferences or implications to be found in such subsequent legislation. *United States* v. *Sampson,* 19 App. D. C. 435; *Rosencrans* v. *United States,* 165 U. S. 257, 262, 41 L. ed. 708, 710, 17 Sup. Ct. Rep. 302; *McCarthy* v. *McCarthy,* 20 App. D. C. 195; *Cope* v. *Cope,* 137 U. S. 682, 686, 34 L. ed. 832, 833, 11 Sup. Ct. Rep. 222. The presumption is strong that Congress, which established the juvenile court and gave it jurisdiction over the parents and guardians of neglected children mentioned in a prior act, did not intend, on March 23, suddenly to take away the particular power and jurisdiction conferred five days before; nor are we impressed with the conflict between these acts, urged before us. Statutes enacted at the same session should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia. Smith* v. *People,* 47 N. Y. 339.

This judgment must be reversed for the reasons we have discussed. We add, however, that for all offenses against the District of Columbia and against the United States within the jurisdiction of the juvenile court, the prosecution should be on information by the corporation counsel, and in the name of the District of Columbia or of the United States as the case may be.

The judgment in the Juvenile Court must be reversed, and the cause remanded, with directions to discharge the defendant, and it is so ordered.                    *Reversed.*