## FULLER v. UNITED STATES.
### No. 746.

Municipal Court of Appeals for the District of Columbia.

April 14, 1949.

Rehearing Denied April 28, 1949.

Earl H. Davis, of Washington, D. C., for appellant.

Chester H. Gray, Principal Asst. Corp. Counsel, of Washington, D. C. (Vernon E. West, Corp. Counsel and Edward A. Beard, Asst. Corp. Counsel, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellant was charged with being the father of an illegitimate child. Prosecution was had in the Juvenile Court under Title 11, Sections 943–946 of the District of Columbia Code. Trial was by jury and resulted in a verdict of guilty. Based on such verdict the court entered an order for the support and maintenance of the child. Defendant appeals.

Appellant's first allegation of error is that the Juvenile Court should have

dismissed the action because the complainant was not a resident of this District. It is true that complainant was a resident of Virginia when she bore the child in a Washington hospital, but this does not preclude the Juvenile Court from taking jurisdiction. The statute reads: "Any unmarried woman who is quick with child may go before the clerk of the juvenile court of the District of Columbia, *or if therein she has been delivered of a bastard child* * * * and accuse any person of being the father of the child. Before issuing a warrant, the clerk shall examine the mother of such bastard child, under oath, concerning her residence and her marriage or single condition when the child was begotten; *where and when she was delivered of such child* * * *."[1] (Emphasis added.) Appellant's counsel has made a thorough search of the authorities and history of similar legislation in other jurisdictions, in support of his contention that residence is a prerequisite to the taking of jurisdiction. But bastardy proceedings are purely statutory[2] and our statute is plain and unambiguous on its face; it clearly provides for jurisdiction in the circumstances outlined in this case. The fact that complainant was delivered of her child in the District bestowed jurisdiction on the trial court.

 Appellant also argues that there was prejudicial error in allowing the prosecution to introduce evidence tending to show that defendant was guilty of the crime of seduction.[3] This objection arises from the presentation of the full story of the couple's first and subsequent meetings, their first intercourse and relations thereafter, alleged promises of marriage and exchange of gifts, extending back to early 1946. While some of this evidence was probably somewhat irrelevant, we cannot find that there was prejudicial error in its

admission. In a proceeding like this, which in this jurisdiction is regarded as quasi-criminal in nature,[4] it should be expected that the government would have to prove its allegations by evidence of this general nature. The acts in question take place clandestinely and under circumstances which are not easily substantiated. Not only are the couple's sexual relations prior to the period of conception admissible but courts generally also admit evidence of other intimacies, promises of marriage, and gifts. These circumstances are admitted for their probative value and their limit and range are largely within the discretion of the trial court.[5] There was no abuse of that discretion here.

 Another allegation of error arises from the refusal of the trial judge to allow defendant to see the original affidavit sworn to by complainant before the clerk of the Juvenile Court. This ruling was made on the ground that the affidavit was "confidential" and appellant maintains that he was deprived of the opportunity to cross-examine complainant in regard to any inconsistent statements she may have made there. Appellant relies particularly upon the fact that in certain states, the statute makes such affidavits admissible as evidence and also upon the fact that a draft of a new act now pending in Congress contains a similar provision. The present statute, however, is silent on the subject. Irrespective of what merit this argument may have, the affidavit was subsequently included in the record by our order, on motion of the government, and with appellant's consent and is now before us. It contains nothing that was not contained in the information prepared by the government. Consequently its exclusion could not have harmed the defense. With respect to an unsigned and unsworn statement made

---

[1] Code 1940, Supp. VI, § 11—944.

[2] 10 C.J.S., Bastards, § 32a.

[3] In connection with this same transaction, appellant was prosecuted for seduction, and convicted, in Arlington, Virginia. In this case in the Juvenile Court there were some references to what witnesses had testified at the "trial" in Virginia; but there was no mention of the conviction.

[4] Peak v. Calhoun, 63 App.D.C. 113, 69 F.2d 989.

[5] Maisch v. State, 128 Okl. 226, 262 P. 203; Siefker v. State, 128 Okl. 96, 261 P. 211; other cases which have held these facts admissible are: Brasseau v. Padlo, 113 Vt. 300, 34 A.2d 186; Haddock v. State, 24 Ala.App. 402, 135 So. 649; State ex rel. Mochnick v. Andrioli, 216 Iowa 451, 249 N.W. 379, and State v. Hammond, 46 Utah 249, 148 P. 420.

by the complainant to the Juvenile Court clerk which was also withheld from appellant as "confidential," this was properly excluded. The rule is clear that a defendant has no absolute right to examine statements made in confidence to a prosecuting officer.[6]

Appellant's next citation of error relates to a charge by the court allowing the jury to determine the proximate date of conception of the child without prior introduction of medical evidence. Though the case was reported stenographically, the judge's charge is not included in the transcript which appellant has brought here. Nor does the record disclose that the point was raised by appellant at the time of the charge. At most it appears that appellant protested the prosecutor's argument to the jury "explaining [the] period of conception in accordance with findings of medical science" which objection was overruled.[7]

Thus we have a record which does not reveal what the judge told the jury, or what objections were made to the charge. We cannot consider the objection, for we have been given no basis on which to rule that the charge was erroneous, or otherwise.[8]

Lastly, it is argued that the court erred in rendering judgment for maintenance and support of the infant without first taking evidence to determine the defendant's financial status and ability to earn. The pertinent statute provides that "the court * * * shall make an order for the annual payment, until the child be fourteen years of age, of such sum of money, in such installments, monthly or otherwise, and in such manner, as shall to the court seem best, and shall also make such order for the keeping, maintenance, and education of the child as may be proper * * *".[9] The court ordered defendant to pay $6 a week for the support of the child until her seventh birthday at which time the payment would be $8 a week until the child reaches 14 years of age. The record fails to disclose what evidence the court considered in reaching its conclusion. It also is silent as to whether defendant attempted to offer any evidence as to earning capacity.

The only standard set out in the statute is that the court shall make an order "as shall to the court seem best," a provision which places the amount of the award within the discretion of the court. We do not find that such discretion was improperly exercised here, in the absence of any evidence to the contrary, in view of the very small sum awarded, a bare subsistence allotment. In a companion criminal statute pertaining to wilful neglect or refusal to support a minor child, the statute specifically provides that the court must consider the circumstances and financial ability or earning capacity of the defendant.[10] Here, in a subsequent statute, nothing to that effect is said. The controlling element as stated in the purpose and basic aims of the Juvenile Court is: "to secure for each child * * * such care and guidance, preferably in his own home, as will serve the child's welfare and the best interests of the state."[11]

Affirmed.

---

[6] Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, and cases in People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200, 207.

[7] This was consistent with the general rule that a court may take judicial notice that the period of human gestation is about 280 days or 9 calendar months. Commonwealth v. Kitchen, 299 Mass. 7, 11 N.E.2d 482; In re Holthausen's Estate, 175 Misc. 1022, 26 N.Y.S.2d 140; State v. Forte, 222 N.C. 537, 23 S.E.2d 842; Cronin v. Cronin, 234 Ky. 207, 27 S.W.2d 950; In re McNamara's Estate, 181 Cal. 82, 183 P. 552, 7 A.L.R. 313. To the contrary are: Bowers v. Bailey, 237 Iowa 295, 21 N.W.2d 773; Harward v. Harward, 173 Md. 339, 196 A. 318.

[8] Varrella v. United States, D.C.Mun. App., 64 A.2d 310, and cases cited.

[9] Code 1940, Supp. VI, § 11—946.

[10] Code 1940, § 22—903.

[11] Code 1940, § 11—902.