Charles **JOHNSON**, Appellant,

v.

Elliott **JOHNSON** et al., Appellees.

No. 17260.

United States Court of Appeals
District of Columbia Circuit.

Argued March 6, 1963.

Decided July 19, 1963.

Petition for Rehearing En Banc
Denied Sept. 24, 1963.

Mr. Benjamin F. Rossner, Washington, D. C., for appellant.

Mr. Tench T. Marye, Washington, D. C., for appellees. Mr. Robert C. Hilldale, Washington, D. C., was on the brief for appellees.

Before EDGERTON, Senior Circuit Judge, and WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This appeal raises questions as to jurisdiction over suits brought in the District of Columbia for support of illegitimate children.

The three appellees are the minor children of the appellant father and Diane Tolliver. The parents have never been married to each other. The mother as next friend filed in the Domestic Relations Branch of the Municipal Court of the District of Columbia (now the Court of General Sessions) a suit against the father for maintenance of the appellee children. In his answer under oath the father admitted jurisdiction of the Branch over the suit, admitted his paternity, and expressed willingness to maintain the children to the extent of his ability. An order, consented to by both parties, was thereupon entered, requiring the father to pay a stated sum per week, for the support of the children.

Some sixteen months later, the mother as next friend of the children moved that the appellant father be adjudged in contempt for failure to make payments for their support as ordered. Appellant's answer to the motion asserted for the first time that the Domestic Relations Branch had no jurisdiction over the suit for maintenance and that the orders against him were accordingly void.

On February 12, 1962, the Domestic Relations Branch found that the appellant father was $315 in arrears in support payments as of November 11, 1961, adjudged him in contempt, and ordered him committed to jail for thirty days. It stayed execution of his commitment on condition that he make current payments and pay at least $20 per month on the arrears since November 11, 1961.

Upon appeal the Municipal Court of Appeals for the District of Columbia (now the District of Columbia Court of Appeals), one judge dissenting, held that the lower court had jurisdiction over the suit and affirmed its finding that the appellant was in contempt for failure to make support payments under its orders. It held, however, that the lower court lacked the power to sentence appellant to imprisonment for his contempt. See 183 A.2d 916 (Mun.Ct.App.1962).

The father petitioned for leave to appeal, and we granted the petition. His essential argument is that under Section 11–907(1) (c) of the D.C.Code (1961), the Juvenile Court of the District of Columbia had exclusive jurisdiction of proceedings to obtain support for illegitimate children, and that Section 11–762 of the Code, giving the Domestic Relations Branch exclusive jurisdiction over "civil actions to enforce support of minor children," applies only to legitimate children.

## I.

Over the years the trend of the law of the District of Columbia has been to offer an increasing degree of protection to illegitimate children, at least in matters of support. Originally, by virtue of reception by the District of the Maryland bastardy statute, the putative father, when paternity had been established, could be required to indemnify the government for moneys expended by it on account of the illegitimate child, as was noted in Moss v. United States, 29 App. D.C. 188 at 191 (1907). At the time of the Moss decision, however, as the court indicated, there was no longer any way whereby the father of an illegitimate child could be required to contribute toward the child's support.[1] In 1912, Congress passed "An Act To provide for the support and maintenance of bastards in the District of Columbia." Act of June 18, 1912, 37 Stat. 134. This Act provided a procedure whereby an unmarried mother could proceed against the putative father in the Juvenile Court to obtain support for the child once paternity was proved or acknowledged.[2]

In 1938, Congress enacted comprehensive legislation defining the nature and functions of the Juvenile Court. Act of June 1, 1938, 52 Stat. 596. This legislation brought together and modernized the earlier enactments concerning that court, and redefined its jurisdiction. Included was the following provision which, with minor amendments not here relevant, is still in force today as D.C.Code § 11–907 (1) (c) (1961), and is relied on by the appellant here:

"SEC. 6. JURISDICTION.—1. CHILDREN.—Except as herein otherwise provided, the court shall have original and exclusive jurisdiction of all cases and in proceedings:

\* \* \* \* \* \*

"(c) *To determine the paternity* of any child alleged to have been born out of wedlock and to provide for his support in accordance with the provisions of an Act providing for the support and maintenance of children born out of wedlock, approved June 18, 1912 \* \* \*." Juvenile Court Act of the District of Columbia § 6(1) (c), 52 Stat. 597 (1938). (Emphasis supplied.)

Some years after the 1938 legislation, prompted by the bar of the District of Columbia, Congress again reexamined the Juvenile Court legislation concerning the support of illegitimates. There resulted a substantial revision and modernization of the 1912 and 1938 Acts. Act of January 11, 1951, 64 Stat. 1240, D.C.Code §§ 11–951 through 11–967 (1961). While

---

1. The court added:
"We fully agreed that the juvenile court should have power upon conviction to compel the father of an illegitimate child to maintain his child. Unhappily, the old bastardy act is no longer in force, the Code failed to revive it, and until Congress gives such power to the judge of the juvenile court, this court cannot affirm such a judgment as this." Moss v. United States, supra, 29 App.D.C. at 195.

2. See H.R.Rep. No. 105, 62d Cong., 1st Sess. (1911); S.Rep. No. 162, 62d Cong., 2d Sess. 2 (1912).

this Act contained some new provisions that will be considered at a later point in this opinion, it did not alter the basic and exclusive remedies provided through the Juvenile Court—remedies which were, as we shall see, quasi-criminal rather than civil in nature.

## II.

In 1956 Congress created the Domestic Relations Branch of the Municipal Court, see §§ 11-758 through 11-770 of the D.C.Code (1961), and defined its jurisdiction in Section 11-762, in pertinent part as follows:

"The Domestic Relations Branch and each judge sitting therein shall have exclusive jurisdiction over all actions for divorce from the bond of marriage and legal separation from bed and board, including proceedings incidental to such actions for alimony, pendente lite and permanent, and for support and custody of minor children; applications for revocation of divorce from bed and board; *civil actions to enforce support of minor children;* civil actions to enforce support of wife; actions seeking custody of minor children; * * *." (Emphasis supplied.)

Section 11-762 was part of the legislation transferring jurisdiction over domestic relations cases generally in the District of Columbia from the United States District Court to the newly-created Domestic Relations Branch. Under Section 16-415 of the Code, the jurisdiction of the District Court in support cases had been limited to suits against a husband to enforce maintenance of his wife and minor children.[3] This statute plainly referred only to legitimate children, that is, those of a husband and wife. Cf. Howard v. Howard, 72 App. D.C. 145, 112 F.2d 44 (1940); Schneider v. Schneider, supra note 2.[4] But in Section 11-762, the jurisdiction of the Domestic Relations Branch in respect of support for minor children is expressed in much broader terms. One clause of this section gives the Branch jurisdiction over *"civil actions to enforce support of minor children,"* unlimited by any reference to husband and/or wife. A separate clause gives jurisdiction over "civil actions to enforce support of wife" (not "wife and minor children"). On the face of the statute, the word "children" can fairly be construed to include all children, legitimate and illegitimate. The statute does not qualify, limit, or define the word "children", and appellant has made no showing that Congress intended the word to be limited. See United States v. Philippine National Bank, 110 U.S.App.D.C. 250, 292 F.2d 743 (1961).

---

3. "§ 16-415. Maintenance of wife and minor children—Enforcement.

"Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony."

Notwithstanding the narrow terms of this section, we held that the District Court under its general equitable powers could enter a maintenance order in favor of a wife and child against a husband, after he had obtained an ex parte foreign decree of divorce, see Hopson v. Hopson, 95 U.S.App.D.C. 285, 221 F.2d 839 (1955), and could enter a maintenance order in favor of a child against his father after a collusive Nevada divorce, see Schneider v. Schneider, 78 U.S.App.D.C. 383, 141 F.2d 542 (1944).

4. Williams v. Amann, 33 A.2d 633 (Mun. Ct.App.1943), discussed in the briefs filed with us, seems irrelevant here. That decision, which related to the enforcement of an agreement to provide support to an illegitimate child, was rendered long before the Domestic Relations Branch was created and before Section 11-762 was enacted. At that time, as has already been shown, the District Court had jurisdiction to give support for minor children only if they were the children of a husband and wife.

We believe, in the absence of anything in the legislative materials to support a view that jurisdiction was to remain precisely the same,[5] that this change in the form and wording of the new jurisdictional statute was deliberate and was intended to accomplish what its language indicates—to confer jurisdiction over civil actions to enforce support of minor children, without any requirement that they must be children of a wife or former wife of their acknowledged father. This view is in harmony with our previous decisions, which have uniformly construed the grant of jurisdiction in suits for support under Section 11–762 as having a broad rather than a limited scope. See Thomason v. Thomason, 107 U.S.App.D.C. 27, 274 F.2d 89 (1959); David v. Blumenthal, 110 U.S.App.D.C. 272, 292 F.2d 765 (1961); and cf. Harris v. Harris, 106 U.S.App.D.C. 282, 272 F.2d 511 (1959); and Wagner v. Wagner, 110 U.S.App.D.C. 345, 293 F.2d 533 (1961).[6]

Appellant asserts, however, that jurisdiction over this civil action to enforce support was exclusively in the Juvenile Court. As we have seen, under Section 11–907 of the D.C.Code, enacted in 1938, the Juvenile Court is given "original and exclusive jurisdiction * * * *To determine the paternity* of any child alleged to have been born out of wedlock and to provide for his support" in accordance with the provisions of Sections 11–951 through 11–967. (Emphasis supplied.) Paternity proceedings under these sections are in some aspects quasi-criminal in nature.[7] They are brought by the filing of an information in the name of the District of Columbia and are prosecuted by the Corporation Counsel (Section 11–951). Such proceedings to establish paternity and to provide for the support of the illegitimate child must be instituted within prescribed time limits: after four months of pregnancy, within two years after the birth of the child, or within one year after the putative father has ceased contributing to the child's support (Section 11–952).[8] In such proceedings the putative father may of course acknowledge paternity (Sections 11–958, 11–960). In the event of failure of the defendant father to comply with any or-

5. See S.Rep.No.384, 84th Cong., 1st Sess. at p. 3 (1955):

"The purpose of this bill is to establish a Domestic Relations Branch in the Municipal Court for the District of Columbia. Jurisdiction in domestic relations matters such as divorce, separation, alimony, maintenance, custody of children, adoption proceedings, and annulments of marriage, would be transferred to the Municipal Court from the United States District Court for the District of Columbia."

H.R.Rep.No.1302, 84th Cong., 1st Sess. at p. 3 (1955), substantially repeats this language. See the statement of Representative Harris, who presented the bill to the House on behalf of the Committee on the District of Columbia, at 102 Cong. Rec. 1401:

"The purposes of the bill are, *first, to provide improved procedures for the handling of domestic relations cases*, and second, to transfer the trials of such cases from the United States District Court for the District of Columbia, the only Federal court in the Nation which decides domestic relations cases, to the municipal court for the District of Columbia." (Emphasis supplied.)

6. Our holding as to the scope of the word "children" is limited to the statute involved in this case. We express no opinion as to its meaning in other sections of the D.C.Code, which must be interpreted in the light of factors and circumstances relevant and appropriate to them. It may be noted, however, that the Juvenile Court Act defines "child" as "a person under the age of 18 years," thus including illegitimates as well as legitimates therein, for purposes of that Act. See Section 11–906(b) (3) of the Code.

7. Peak v. Calhoun, 63 App.D.C. 113, 69 F.2d 989 (1934); Fuller v. United States, 65 A.2d 589 (Mun.Ct.App.1949); District of Columbia v. Turner, 154 A.2d 925 (Mun.Ct.App.1959). See also S.Rep.No. 462, 85th Cong., 1st Sess. 3-4 (1957).

8. Since the youngest child of the parties involved here was more than two years old when the complaint was filed and there is no showing that the father had ever contributed to the children's support, it may be that the Corporation Counsel could not have instituted proceedings in this case had the mother made a complaint to him pursuant to Section 11–953.

der for support which it may enter, the Juvenile Court may imprison the defendant for contempt or treat his failure as a misdemeanor (Sections 11–959, 11–961). But there is no provision in any statute that the mother must elect this quasi-criminal remedy, instead of proceeding by civil action in the Domestic Relations Branch, when paternity is not in dispute. If paternity were disputed it may well be that the Domestic Relations Branch would dismiss for lack of jurisdiction, in view of the provision giving the Juvenile Court "exclusive jurisdiction * * * [t]o determine the paternity * * * and to provide for his support" in Section 11–907. (Emphasis supplied.) But we think a support proceeding in which paternity is not in issue, brought in the Domestic Relations Branch in accord with the jurisdiction expressly given the Branch by Section 11–762, does not in any way "affect or diminish the jurisdiction of the Juvenile Court." [9] The grant to the Branch, in that Section, of "jurisdiction over * * * civil actions to enforce support of minor children," could not be more explicit. The grant should not be defeated by a mere obscure implication, if any, in a different section of the Code.

An independent basis for our conclusion that the Domestic Relations Branch had jurisdiction of this complaint may perhaps be found in the provisions of the Uniform Support Law, enacted on July 10, 1957. See Sections 11–1601 through 11–1624 of the D.C.Code (1961). Section 11–1606 gives the Domestic Relations Branch jurisdiction of proceedings to enforce duties of support brought under the Support Law. In enacting this provision, Congress clearly intended that the duty of a father to support his illegitimate children [10] should, under some circumstances at least, be enforceable in the Domestic Relations Branch. Whether the present suit can properly be considered as one brought pursuant to the Support Law is a matter we need not decide, as we think the jurisdiction of the Branch is in any event clear.

### III.

Our decision today holds that in cases where the natural father acknowledges paternity illegitimate children are entitled to the civil remedies for support available in the Domestic Relations Branch of the Court of General Sessions. They also retain, of course, all the remedies presently available to them in the Juvenile Court.

We affirm the decision of the District of Columbia Court of Appeals insofar as it holds that the Domestic Relations Branch had jurisdiction over the suit and that appellant was in contempt for failure to comply with its orders. The question of the Branch's power to commit appellant for his contempt is not before us on appeal and we express no opinion as to it.

So ordered.

DANAHER, Circuit Judge (dissenting).

The complaint filed in the Domestic Relations Branch of the Municipal Court for the District of Columbia [1] alleged that the plaintiffs are the minor children "of the defendant, Charles Johnson, who is their natural father. The

---

9. The statute creating the Domestic Relations Branch states that:
   "Nothing contained in this subchapter shall be construed so as to affect or diminish the jurisdiction of the Juvenile Court of the District of Columbia, or any judge presiding therein." D.C.Code § 11–769 (1961).

10. It is not disputed here that in the District of Columbia the father is under a duty to support an illegitimate child until the age of 16, once paternity is established by court decree or is acknowledged under oath. See Sections 11–958 and 11–1620 of the D.C.Code (1961). The last-mentioned section amplifies or supplements (i.e., is "not in substitution for") the duty imposed by Section 11–958 of the Code. See H.R.Rep.No.525, 85th Cong., 1st Sess. 2 (1957); also S.Rep. No.462, 85th Cong., 1st Sess. 2 (1957).

1. Now known as the Court of General Sessions for the District of Columbia.

mother and father of these minor children are not married to each other." Jurisdiction was said to be "derived" from the Act of April 11, 1956,[2] and D.C.Code § 16–415 (1961).[3] My colleagues concede, as they must, that section 415 is not applicable, for, as they say, "This statute plainly referred only to legitimate children, that is, those of a husband and wife." They turn, accordingly, to D.C. Code § 11–762 (1961) as the predicate for their conclusion that jurisdiction was well founded.

My colleagues here say that the unmarried mother may secure a hollow judgment[4] for the support of her illegitimate children since Public Law 486[5] creating the Domestic Relations Branch had accorded to it jurisdiction over "civil actions to enforce support of minor children." · In Thomason v. Thomason, 107 U.S.App.D.C. 27, 274 F.2d 89 (1959), we defined "civil actions" to include a counterclaim based upon an agreement for support entered into between an erstwhile married couple. As to such actions Public Law 486 conferred upon the Branch the power previously exercised by the District Court, we said. And see David v. Blumenthal, 110 U.S.App.D.C. 272, 292 F.2d 765 (1961), where we discussed the power which had been "transferred" from the District Court to the Branch. The District Court never exercised jurisdiction over a *civil* action to secure to an unwed mother, support for her illegitimate children. Surely no such power was transferred if it never existed in the District Court. So my colleagues conclude, in effect, such power was created and vested in the Branch, yet they point to not a single word in the hearings or elsewhere to demonstrate that thereafter the Branch was to exercise a jurisdiction which had been vested in the Juvenile Court.

The grant of such jurisdiction, my colleagues say, "should not be defeated by a mere obscure implication, if any, in a different section of the Code." I see no "implication" and no obscurity in section 113 of Public Law 486. It is not in some unrelated "section of the Code." Section 113 was part of the very same Act. It explicitly provided:

"Nothing contained in this Act shall be construed so as to affect or diminish the jurisdiction of the Juvenile Court of the District of Columbia, or any judge presiding therein."

The Juvenile Court had been functioning for half a century. It has investigators and staff officers in position to assist it in carrying out the powers entrusted to it. The Branch has no such facilities. Congress, our local judges and community leaders concerned with the problem were fully alive, not only to the questions inherent in these situations but to the policy[6] sought to be implemented.

---

2. 70 Stat. 111, ch. 204, D.C.Code § 11–758 et seq. (1961), whereby there was created in the Municipal Court for the District of Columbia a Domestic Relations Branch, hereinafter referred to as "the Branch."

3. Quoted in full in the majority opinion, note 3, from which we excerpt only the following:
   "Whenever any *husband* shall fail or refuse to maintain *his wife* and *minor children* * * * the court, on application of the *wife* * * * may decree that he shall pay her, periodically, such sums * * *" etc. (Emphasis supplied.)

4. The Municipal Court of Appeals held that the challenged support order may not be enforced by imprisonment, a conclusion which the majority does not reach.

I deem it strange that Congress could be said to have intended that a vain and empty result be reached when it had already provided means by which to provide monetary relief. See note 6, infra.

5. 70 Stat. 111 (1956).

6. In 1912 Congress enacted 37 Stat. 134 to "provide for the support and maintenance of bastards in the District of Columbia." H.R.Rep.No.105, 62d Cong., 1st Sess. (1911) stated:
   "It is believed that the District of Columbia is the only place in the Union where the father is not liable for the support of his illegitimate child. It is estimated that over 50 per cent of the dependent children cared for at the expense of the public appropriation for the District of Columbia are illegitimate. The

As late as January 11, 1951, Congress had passed "An Act Relating to Children Born Out of Wedlock." [7] First, the Act specifically repealed 37 Stat. 134, 41 Stat. 1144 and 44 Stat. 208. Next, the legislation provided that the "juvenile court of the District of Columbia is hereby given jurisdiction of all cases arising under this Act." Just as the Branch in Public 486 had been given "exclusive jurisdiction" over civil actions involving agreements with reference to the support of children of married couples, whether later divorced or not, so the Juvenile Court was given "jurisdiction of all cases" arising under the 1951 Act. Thus in section 12 [8] the 1951 Act dealt with "Voluntary Acknowledgement of Paternity By Father." The section outlined the basis upon which the *Juvenile Court* might give effect to an agreement by a putative father to support a child born out of wedlock. It had long since been held that if a putative father had entered into a *valid contract* to support an illegitimate child, an action for its breach would lie. Williams v. Amann, 33 A.2d 633 (Mun.Ct.App.D.C.1943). The court there held that such an action was to be grounded, not on statutes relating to bastardy proceedings, but on the breach of the promise to support.

Moreover, the 1951 Act reaffirmed the Juvenile Court's concurrent jurisdiction with the United States District Court for the District of Columbia as to all cases arising under the misdemeanor section, D.C.Code § 22–903 (1961). But it did more. The 1951 Act enlarged the definition of the nonsupport misdemeanor previously outlined in section 22–903 so that it would "apply to any person who * * * fails to support his illegitimate child

when paternity has been established judicially or when paternity has been directly acknowledged by the putative father under oath, or indirectly acknowledged by voluntarily making contributions to the support of such child." To cap it all—to execute District policy to secure support for the illegitimate child and relieve the District from the burden of maintenance—to put the entire problem in the hands of a court which for fifty years has been dealing with it and which handles more than 1,000 paternity cases every year—Congress said: "§ 11–907. Jurisdiction—Original and exclusive. 1. *Children.*—Except as herein otherwise provided, the court shall have *original and exclusive jurisdiction of all cases* and in proceedings" (emphasis supplied) involving: the determination of paternity of illegitimate children (section 11–907, subd. 1.(c)); provision for prenatal expenses (section 11–958); support payments (section 11–959); and, *inter alia,* the steps to be taken under sections 11–960 and 11–961, previously discussed. That is why Congress in Public 486 provided that nothing contained in that Act shall be *construed* so as to affect or diminish the jurisdiction of the Juvenile Court. I think my colleagues have misconstrued the legislation.

I think the Branch had no authority to enter the order which the Municipal Court of Appeals affirmed, and which my colleagues now would ratify. I would reverse to the end that a proceeding be instituted in the Juvenile Court of the District of Columbia against Johnson pursuant to the provisions of D.C.Code § 11–961(a) and (b), for if he is in violation, that misdemeanor is continuous and

community should be relieved of this burden at the earliest date, and the putative fathers should be made to meet the charges of support and education of their illegitimate children."

The report cited Moss v. United States, 29 App.D.C. 188 at page 195 (1907) wherein the court said:

"We fully agreed that the juvenile court should have power upon conviction to

compel the father of an illegitimate child to maintain his child."

7. 64 Stat. 1240; D.C.Code § 11–951 et seq. (1961).

8. 64 Stat. 1242; D.C.Code § 11–960 (1961).

will predicate a present prosecution—with some chance of affording affirmative relief.[9]  And after all, is that not what the children require—and the policy the District seeks to effectuate?

9.  Aside from whatever might happen in a § 11–961(a) and (b) proceeding, instead of a mere money judgment which the Branch has no power to enforce as pointed out by Chief Judge Hood in his dissent, I suspect that at the very least appellant would seek to negotiate an agreement to bring himself within the provisions of D.C.Code § 11–960.  Otherwise, possible imprisonment in the workhouse for no more than twelve months, coupled with a fine, would not seem to afford Johnson a propitious prospect.