# THOMPSON *v.* THOMPSON.*

CONSTITUTIONAL LAW; DIVORCE; DECREES; COSTS.

1. Where the "full faith and credit" clause of the Constitution of the United States (art. 4, sec. 1) is invoked to compel in one State the enforcement of a judgment rendered in another State, the question of the jurisdiction of the court entering the decree over the subject-matter and person of the defendant is always an open one.

2. Where, pending a suit in this District by a wife against her husband for maintenance, but before service is had upon the husband, he institutes in Virginia a suit for divorce *a mensa et thoro* against her for abandonment, obtains service upon her by publication and by summons served upon her in the District, and is awarded a final decree by the Virginia court, and it appears that, although the parties were married in the District, where the wife then resided and where the husband was employed as a school-teacher, his domicil was in Virginia at the time of marriage and when the decree of divorce was passed, the Virginia decree is entitled to full faith and credit in this District, and is a bar to the suit by the wife here, irrespective of whose conduct it was that led to the abandonment of the husband and the matrimonial domicil by the wife.

---

*Divorce.*—As to validity of decree of divorce obtained on publication or service out of state, where defendant did not appear, see note to *Butler v. Washington,* 19 L.R.A. 814; as to jurisdiction of court of state of matrimonial domicil to grant a divorce upon constructive service of process against defendant, who is out of jurisdiction, see note to *State ex rel. Aldrach v. Morse,* 7 L.R.A.(N.S.) 1127; as to extraterritorial effect of decree of divorce rendered upon constructive service, see notes to *Joyner v. Joyner,* 18 L.R.A.(N.S.) 647, and *Benton's Succession,* 59 L.R.A. 162.

D. C.]                          Statement of the Case.

3. A decree of divorce is not void, but at most is irregular, and cannot be collaterally attacked, when service on the defendant was had by publication, based upon an affidavit of nonresidence made upon information and belief, although the statute in such cases required an affidavit that the defendant was not a resident.

4. Under Va. Code, sec. 3232, providing for service by publication and also for personal service beyond the limits of the State, in suits against nonresidents, personal service, if good, will take the place of service by publication, but personal service is not an abandonment of notice by publication.

5. Where this court reversed a decree for the wife in a maintenance suit, and directed the dismissal of her bill of complaint, the husband was required to pay the costs in this court, but the clerk was directed not to tax an attorney's fee.

No. 2065.   Submitted February 10, 1910.   Decided April 5, 1910.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit for maintenance.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia against the appellant, Charles N. Thompson, in a suit for maintenance brought against him by the appellee, Jessie E. Thompson, his wife. For convenience, the parties will be referred to in this opinion as husband and wife.

The parties were married on the 7th day of December, 1905, in the District of Columbia, and lived together as husband and wife until the 13th of June, 1907. The husband is a school-teacher by profession, and for several years past has been following his occupation in the District of Columbia, where he has temporarily resided during the school terms. He was born in Loudoun county, Virginia, where he still claims his domicil. The record shows that he is a duly registered and qualified voter in that county; that he owns property there; that he has served on juries there; that he has spent his time

there when he was not actively employed in school work; and that he frequently returns during the course of the school year to look after his business at that point.

On the 29th of July, 1907, the wife filed the bill in the present case for maintenance, against the husband, in which she charged the husband with extreme cruelty beginning the day after their marriage and continuing until the 13th of June, 1907, when she alleges she was compelled to leave him.

On the 3d day of September following, the husband brought suit in the circuit court of Loudoun county, Virginia, for a divorce *a mensa et thoro,* in the course of which, on the 16th day of September, he filed a bill in said court charging the wife with having, on the 13th day of June, 1907, wilfully abandoned his bed and board and deserted him without any cause whatever, and, notwithstanding his repeated entreaties and endeavors to induce her to return, she had refused to do so. Service by publication was secured, in which the husband, in an affidavit upon information and belief, declared that the wife was a nonresident of Virginia. In addition to the service by publication, a personal summons was served on the wife in the District of Columbia, and return thereof made by the affidavit of a deputy marshal of this District.

The Virginia court, after taking testimony, entered a decree in favor of the husband, granting him a divorce *a mensa et thoro* and devesting each of the parties of all marital rights in the property of the other. Subsequent to the granting of this divorce, and upon the return of the husband to the District of Columbia, he was served with process in the present suit. He thereupon filed his plea, setting up the Virginia decree and the proceedings upon which it was rendered, as a bar to the wife's suit in this District. Upon the hearing of the plea, it was overruled, and he was allowed fifteen days in which to answer the bill. The husband answered the bill, and, in his answer, alleged that his domicil, as well as the matrimonial domicil of the parties, was in Loudoun county, Virginia. He denied the charges contained in the bill upon which the wife sought to secure a decree for maintenance, and, upon issue

joined, a judgment was entered against the husband, awarding the wife $75 per month maintenance and an attorney's fee of $500. From this judgment the case comes here on appeal.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton,* and *Mr. Joseph W. Cox* for the appellant.

*Mr. William M. Lewin* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Counsel for the husband base their claim for a reversal of the decree below upon the following assignments of error:

"1. The court erred in overruling the plea setting up the Virginia decree as a bar to the action for maintenance.

"2. The court erred in holding that the wife is entitled to maintenance, notwithstanding the decree of the Virginia court.

"3. The court erred in holding, upon the merits of the case as disclosed by the testimony, that the wife is entitled to maintenance."

Lying at the very root of this controversy is the validity of the Virginia decree of divorce. It is insisted by counsel for the husband that this decree affords a complete bar to the right of the wife to recover in this action. The first section of the 4th Article of the Constitution of the United States provides: "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." Congress, in the exercise of the power thus conferred, enacted that "the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." (U. S. Rev. Stat. sec. 905, U. S. Comp. Stat. 1901, p. 677.)

It is clear that this provision of the Constitution was intended to promote certainty and uniformity among the States,

and to regard the judgments of one State as final and conclusive in all the other States, except when challenged for lack of jurisdiction of the court of the State where originally rendered. It is elementary that, where the full faith and credit clause of the Constitution is invoked to compel in one State the enforcement of a judgment rendered in another, the question of the jurisdiction of the court entering the decree over the subject-matter and person of the defendant is always an open one. *National Exch. Bank* v. *Wiley,* 195 U. S. 257, 49 L. ed. 184, 25 Sup. Ct. Rep. 70.

By the Code of Virginia, sec. 2259, the circuit and corporation courts, on the chancery side, have jurisdiction of suits for annulling or affirming marriages, and for divorce. It requires that, before a suit for the annulment of a marriage or for divorce shall be maintainable, one of the parties shall have been. domiciled in the State for at least one year, and that the suit shall be brought in the county or corporation in which the parties last cohabited, or, at the option of the plaintiff, in the county or corporation in which the defendant resides, if a resident of the State, and, if not a resident, in the county or corporation in which the plaintiff resides.

There can be no doubt of the power of the legislature of a State to prescribe the conditions upon which the marriage relation between its own citizens may be dissolved. When one of the parties is guilty of conduct which, by the law of the State, authorizes the other to apply for and secure a divorce, and. abandons the State of the matrimonial domicil, it is within the power of the legislature to provide means whereby the courts, on behalf of the injured and abandoned party, may extend their process into another State, and acquire jurisdiction over the offending party to render a decree of dissolution of the marriage relation that will be accorded full faith and credit in the State to which the offending party has fled. *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. ed. 565; *Cheely* v. *Clayton,* 110 U. S. 701, 28 L. ed. 298, 4 Sup. Ct. Rep. 328; 2 Bishop, Marr. & Div. § 156.

This brings us to the Virginia decree, which reads as follows:

"It appearing that the complainant hath proceeded regularly at rules to mature his suit against defendant, who is a nonresident of Virginia, both by personal service of process and by publication, in the mode prescribed by statute, this case was set down for hearing and came on this day to be heard on said proceedings at rules, the bill of complainant and the depositions of witnesses regularly taken and returned to the court.

"On consideration whereof, the court being of the opinion that the complainant hath made out his case by legal evidence, doth adjudge, order, and decree that the prayer of the bill be, and the same is hereby granted; that the complainant, Charles N. Thompson, be and hereby is granted a divorce *a mensa et thoro* from said defendant, Jessie E. Thompson; and that each of them be and he and she are devested of all marital rights in the other's property.

"And it is further ordered that this cause be placed upon the suspended docket, with leave to the complainant to apply for further relief whenever he may be advised that he is entitled thereto."

We think the case of *Atherton* v. *Atherton,* 181 U. S. 155, 45 L. ed. 794, 21 Sup. Ct. Rep. 544, is decisive of this case. The facts in that case and this are identical. In that case the facts are stated by the court as follows: "On October 17, 1888, the parties were married at Clinton, Oneida county, New York, the plaintiff being a resident of that place, and the defendant a resident of Louisville, Kentucky. Immediately after the marriage, the parties went to and resided at Louisville, in the house with the defendant's parents, had a child born to them on January 8, 1890, and there continued to reside as husband and wife until October 3, 1891. Then, owing to his cruel and abusive treatment, without fault on her part, she left him, taking the child with her, and, in a few days thereafter, returned to her mother at Clinton, and has ever since resided there with her mother, and is a resident and domiciled in the State of New York, and has not lived or cohabited with the

defendant.    When she so left him and went to Clinton, she did so with the purpose and intention of not returning to the State of Kentucky, but of permanently residing in the State of New York."

In the case at bar the husband was born and reared in Loudoun county, Virginia, where he resided at the time of his marriage, and where the matrimonial domicil was maintained up to the time of the granting of the decree of divorce.    The wife at the time of the marriage was a resident of the District of Columbia.    They were married in this District temporarily residing here during that portion of the year when the husband's occupation of a school-teacher demanded his presence, but the matrimonial domicil was established at the domicil of the husband, in Virginia, and remained there until, because of his alleged mistreatment and abuse, the wife abandoned him and established her residence in the District of Columbia. It will be observed that the facts upon which the jurisdiction of the court to enter a decree of divorce in favor of the husband, that is entitled to full faith and credit in the District of Columbia, is based, are in all particulars the same as those upon which the supreme court required the New York courts to accord full faith and credit to the Kentucky decree in the case of *Atherton* v. *Atherton.*

In that case, after the court made an exhaustive review of the authorities, it upheld the Kentucky decree as entitled to full faith and credit in New York, and as constituting a conclusive bar to the action of the wife for divorce in the latter State.    The court in its conclusion said: "We are of opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky, and were actually made, to give the wife actual notice of the suit in Kentucky, as to make the decree of the court there, granting a divorce upon the ground that she had abandoned her husband, as binding on her as if she had been served with notice in Kentucky, or had voluntarily appeared in the suit.    Binding her to that full extent, it established, beyond contradiction, that she had abandoned her husband, and precludes her from asserting that she left him on ac-

count of his cruel treatment. To hold otherwise would make it difficult, if not impossible, for the husband to obtain a divorce for the cause alleged, if it actually existed. The wife not being within the State of Kentucky, if constructive notice, with all the precautions prescribed by the statutes of that State, were insufficient to bind her by a decree dissolving the bond of matrimony, the husband could only get a divorce by suing in the State in which she was found; and by the very fact of suing her there he would admit that she had acquired a separate domicil (which he denied), and would disprove his own ground of action that she had abandoned him in Kentucky."

But it is insisted by counsel for the wife that the Virginia decree is not entitled to full faith and credit in this District, under the decision of the supreme court in the case of *Haddock* v. *Haddock*, 201 U. S. 562, 50 L. ed. 867, 26 Sup. Ct. Rep. 525, 5 A. & E. Ann. Cas. 1. The facts in that case are entirely different from those in the case at bar. There, the matrimonial domicil was in New York State, and the husband abandoned the wife, leaving her at the matrimonial domicil, and took up his residence in the State of Connecticut, where he subsequently secured a decree of divorce upon constructive service. The decree was given upon the wrongful representation of the husband that the wife had deserted him, when, in fact, he was the one guilty of desertion. It will be observed that the facts in that case do not correspond with those in the case before us. There, the husband abandoned the wife in the State of the matrimonial domicil, and fled to a foreign State, where he secured a decree of divorce which he sought to have accorded full faith and credit in the State of the matrimonial domicil. Here, the wife abandoned the husband in the State of the matrimonial domicil, where the husband subsequently secured a decree of divorce, which he seeks to have given full faith and credit in the jurisdiction to which the wife fled and took up her residence. The decision in *Atherton* v. *Atherton*, 181 U. S. 155, 45 L. ed. 794, 21 Sup. Ct. Rep. 544, is approved by the court in the decision in *Haddock* v. *Haddock*, where Mr. Justice White, speaking for the majority

of the court, said: "So, also, it is settled that where the domicil of a husband is in a particular State, and that State is also the domicil of matrimony, the courts of such State, having jurisdiction over the husband, may, in virtue of the duty of the wife to be at the matrimonial domicil, disregard an unjustifiable absence therefrom, and treat the wife as having her domicil in the State of the matrimonial domicil for the purpose of the dissolution of the marriage, and as a·result have power to render a judgment dissolving the marriage, which will be binding upon both parties, and will be entitled to recognition in all other States by virtue of· the full faith and credit clause."

Inasmuch as the decision in *Haddock* v. *Haddock* is based upon a state of facts the exact antithesis of that in the case at bar, and the facts in *Atherton* v. *Atherton* are exactly similar to those in the case before us, we will not concern ourselves with the distinctions in the Haddock Case, but will adhere to the decision in the· Atherton Case as binding upon us and conclusive of the question here under consideration.

The question of whose conduct it was that·led to the abandonment of the husband· and the matrimonial domicil by the wife becomes immaterial, since, in the ·Atherton Case, as we have observed, the court refused to permit. that question to be inquired into in New York for the purpose of impeaching the .Kentucky decree. The Kentucky decree having been secured in the State of the matrimonial domicil at the time of the separation, upon the ground of desertion by the wife, it foreclosed all inquiry in New York as to the offending party. So here, the Virginia decree having been awarded upon evidence to the satisfaction of the courts of the State that the wife wrongfully deserted the husband, full faith and credit would not be accorded by permitting an inquiry into the same question in this District for the purpose of impeaching the foreign de-·cree. We must treat this question as foreclosed by the Virginia decree.

It is insisted, however, that, conceding the jurisdiction of the Virginia court to enter a proper decree of divorce to the hus-

band, the proceedings, as shown by the judgment roll, were so defective as not to give the court, under the statutes of that State, jurisdiction over the wife, and that the decree is void in Virginia. Sec. 3230 of the Virginia Code, among other things, provides: "On affidavit that a defendant is not a resident of this State, * * * an order of publication may be entered against such defendant."

The rule as to the sufficiency of the affidavit for service by publication is well stated in *Atkins* v. *Atkins,* 9 Neb. 191, 2 N. W. 466, as follows: "The rule may be stated thus: If there is a total want of evidence upon a vital point in the affidavit, the court acquires no jurisdiction by publication of the summons; but where there is not an entire omission to state some material fact, but it is insufficiently set forth, the proceedings are merely voidable." In the present case, if the decree of divorce granted the husband in Virginia is void, the courts of the District of Columbia have jurisdiction to grant the wife the relief prayed for in her bill. If the Virginia court had jurisdictional power to grant the decree of divorce, however irregular and erroneous the proceedings, the decree cannot be disturbed. The proceedings may have been such as to render the decree voidable, but not void. If only voidable it cannot be attacked in a collateral proceeding.

It has been generally held that an affidavit for service by publication in a divorce case made upon information and belief, as was done in this case, is sufficient to support the validity of the decree. In *Pettiford* v. *Zoellner,* 45 Mich. 358, 8 N. W. 57, Mr. Justice Graves, considering a statute similar to the one here under consideration, which did not specifically require a positive affidavit, said: "It is contended that this affidavit presents no facts which could give the officer jurisdiction to make the order, the deponent merely testifying to information and belief, and not even giving the sources of his information. That this affidavit is not what it ought to have been may be fully admitted; but when it is claimed that the order of publication and the subsequent decree of the court are void for this reason, the court may well hesitate before acceding to a

construction so far-reaching and so destructive. * * *
Coming to the proceeding in question, the statute does not as-
sume to explain what shall amount to proof, but simply pro-
vides that proof of the fact shall be made by affidavit; the
officer is to find enough in the affidavit to satisfy his judgment,
enough to amount to proof to his mind, and if the contents of
the affidavit tend to make out what is required as the basis for
the order, it contains sufficient to afford his judgment the ma-
terials on which to exercise itself, and his decision cannot be
held void for defect in the proof offered to him." To the same
effect are *Malaer* v. *Damron,* 31 Ill. App. 572; *Walter* v. *De
Graaf,* 19 Abb. N. C. 406.

We are of the opinion that the matter here complained of
does, at most, amount to a mere irregularity in the proceedings.
The Virginia court had jurisdiction of the subject-matter of
the suit, and we think there is sufficient shown by the record to
give the court jurisdiction of the person of the defendant for
the purposes of the decree entered. There was a substantial
compliance, at least, with the provisions of the Virginia stat-
ute authorizing constructive service. Where this appears, it
will be presumed that the court had sufficient evidence before
it to satisfy it that all the requirements of the statute had been
satisfied. Certainly, in the absence of any direct attack upon
this decree in the courts of the State where rendered, we would
not be justified in holding it void, except upon the clearest
proof of a total failure of jurisdiction over the defendant in
the foreign court. No such condition is disclosed by this
record.

The distinction between the effect to be given in collateral
proceedings to void judgments and judgments that are merely
erroneous is clearly expressed by Mr. Justice Baldwin in *Voor-
hees* v. *Jackson,* 10 Pet. 449, 9 L. ed. 490: "The line which
separates error in judgment from the usurpation of power is
very definite; and is precisely that which denotes the cases
where a judgment or decree is reversible only by an appellate
court, or may be declared a nullity collaterally, when it is
offered in evidence in an action concerning the matter adjudi-

cated or purporting to have been so.  In the one case, it is a record importing absolute verity; in the other mere waste paper; there can be no middle character assigned to judicial proceedings, which are irreversible for error.  Such is their effect between the parties to the suit; and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution."

The rule as to the effect to be given the judgment of a court of a sister State in a collateral proceeding is stated in *Kinnier* v. *Kinnier,* 45 N. Y. 535, 6 Am. Rep. 132, as follows: "A judgment of a sister State cannot be impeached by showing irregularity in the forms of the proceeding, or a noncompliance with some law of the State where the judgment was rendered relating thereto, or that the decision was erroneous.  Jurisdiction confers power to render the judgment, and it will be regarded as valid and binding until set aside in the court in which it was rendered."

Inasmuch as the Virginia decree is *res judicata,* and binding in this District under the full faith and credit clause of the Constitution, it follows that the bill below should have been dismissed upon the plea of the Virginia decree in bar of this action.  It has been held in Virginia in *Harris* v. *Harris,* 31 Gratt. 13, that, where the wife abandons the husband, and he has not committed any breach of the marital duty, she is not entitled to separate maintenance.  If we are to give full faith and credit to the Virginia decree, we must presume that the evidence of abandonment on the part of the wife, and the absence of blame on the part of the husband, was established to the satisfaction of the court making the decree.  This rule was stated by Mr. Justice Swayne in *Cornett* v. *Williams* (*Nash* v. *Williams*) 20 Wall. 227, 250, 22 L. ed. 254, 259, as follows: "The settled rule of law is that jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud.  Every intendment is made to support the proceeding.  It is regarded as if it were regular in all things and irreversible for

error. In the absence of fraud no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Infinite confusion and mischiefs would ensue if the rule were otherwise." Hence that question is not open for investigation here. However, it was conceded at bar that, if the Virginia decree was not void, this action could not, upon any theory, be maintained.

The personal service made in this District is assailed on the ground that it was made too late. This objection cannot affect the result, since we have held the constructive service sufficient to give the Virginia court jurisdiction of the parties. The Virginia Code, sec. 3232, among other things, provides: "Personal service of the summons, scire facias, or notice may be made by any person not a party to or otherwise interested in the subject matter in controversy, on a nonresident defendant out of this State, which service shall have the same effect, and no other, as an order of publication duly executed [or the publication of a copy of process or of notice under this chapter, as the case may be]. In such case the return must be made under oath, and must show the time and place of such service, and that the defendant so served is a nonresident of this State. Upon any trial or hearing under this section such judgment, decree, or order shall be entered as may appear just."

It will be observed that, if the personal service was good, it would take the place of service by publication, but, in no event, could the attempt at personal service invalidate a constructive service otherwise sufficient. It is commendable practice, where summons or notice has been published, to give personal service to the nonresident defendant, and such personal service is never regarded as an abandonment of notice by publication. As was said by the court in a divorce proceeding in *Burnes* v. *Burnes,* 61 Mo. App. 612: "Thus, to supplement the constructive service of notice by publication, with that of actual notice, would seem to be commendable rather than reprehensible; especially so in a case of this kind, * * * and ought not to have the effect to invalidate or supersede the first service."

It is unnecessary to review the other questions presented by this appeal. The decree is reversed, with costs, and the cause is remanded, with instructions to the court below to enter an order vacating the decree and dismissing the bill. *Reversed.*

A motion by the appellee for a modification of the decree of this court was granted April 18, 1910, Mr. Justice VAN ORSDEL delivering the opinion of the Court:

On consideration of the appellee's motion for a modification of the decree in the above-entitled cause, it is by the court this day ordered that said motion be, and the same is hereby, granted, and that the decree entered herein on the 5th day of April, A. D. 1910, be, and the same is hereby, modified so as to read that the decree of the supreme court of the District of Columbia in this cause be, and the same is hereby, reversed, costs in this court to be paid by the appellant; and tnat this cause be, and the same is hereby, remanded to the said supreme court, with directions to enter an order vacating the decree and dismissing the bill. No attorney's fee will be taxed in this court.