RICE *v.* RICE.

No. 117.   Argued December 14, 1948.—Decided April 18, 1949.

*Daniel D. Morgan* argued the cause for petitioner. With him on the brief was *Thomas F. Seymour.*

*Ralph H. Clark* and *Samuel A. Persky* argued the cause and filed a brief for respondent.

PER CURIAM.

The question for decision here is whether the courts of Connecticut gave to a Nevada divorce decree the full faith and credit required by Art. IV, § 1 of the Constitution. Respondent brought the action in a Connecticut Superior Court, seeking a declaratory judgment that a decree of divorce entered against her and in favor of her

husband, the late Herbert N. Rice, by a Nevada court is not entitled to full faith and credit because he was not domiciled in that state at the time the decree was entered. Petitioner, who had married Herbert N. Rice following his divorce, and the administrator of his estate were joined as defendants. The purpose of the action was to determine the widowhood status of the parties and to decide questions concerning the inheritance of the property of the decedent, who died intestate.

After a full trial, judgment was entered in favor of respondent, and the court's finding that Herbert N. Rice had never established a bona fide domicile in Nevada was affirmed on appeal by the Supreme Court of Errors of Connecticut. 134 Conn. 440, 58 A. 2d 523. We granted the petition for certiorari, 335 U. S. 842, to consider petitioner's contention that the Connecticut courts did not fairly discharge the duty of respect owed the Nevada decree under this Court's decisions in *Williams* v. *North Carolina,* 325 U. S. 226, and *Esenwein* v. *Commonwealth,* 325 U. S. 279.

Upon full consideration of the record, the opinion of the Supreme Court of Errors, and the argument of counsel, we have concluded that the Connecticut courts gave proper weight to the claims of power by the Nevada court, that the burden of proving that the decedent had not acquired a domicile in Nevada was placed upon respondent, that this issue of fact was fairly tried according to appropriate procedure, and that the findings of the Connecticut courts are amply supported in evidence. Our statement in the *Esenwein* opinion, 325 U. S. at 281, that "It is not for us to retry the facts, and we cannot say that in reaching their conclusion the [Connecticut] courts did not have warrant in evidence and did not fairly weigh the facts," is appropriate here.

*Sherrer* v. *Sherrer,* 334 U. S. 343, and *Coe* v. *Coe,* 334 U. S. 378, decided by this Court last term, are not in point.

No personal service was made upon respondent, nor did she in any way participate in the Nevada proceedings. She was not, therefore, precluded in the present action from challenging the finding of the Nevada court that Herbert N. Rice was, at the time of the divorce, domiciled in that state.

*Affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE RUTLEDGE dissent.

MR. JUSTICE JACKSON, dissenting.

Since this case involves only reappraisal of evidence, and we decline to do that, it is hard to see a reason for granting certiorari unless it was to record in our reports an example of the manner in which, in the law of domestic relations, "confusion now hath made his masterpiece." The question is whether property owned in Connecticut by one who has obtained a Nevada divorce and remarried in that State can be taken from his acting widow and bestowed upon the woman she superseded.   The facts are these:

After twenty years of married life in Connecticut with Lillian, Rice arrived at Reno, Nevada, on March 23, 1944, and began a divorce action on May 5.   The complaint and process were handed to Lillian at her home in Connecticut.   She was not served with process in Nevada.   She was teaching school in Connecticut, never had lived in Nevada, and did not appear personally or by attorney in the action, which she claims was a surprise maneuver on the part of Rice.

Rice had rented a furnished room in Reno and testified that he intended to remain there "indefinitely."   He was awarded a divorce from Lillian on June 13 and wired Hermoine, who arrived there on July 3.   They were immediately married and never returned to Connecticut. They retained the room in Reno, which they occupied

from time to time, and both obtained war employment in California where six months later Rice died.

Lillian brought an action in Connecticut to have herself declared his widow insofar as Connecticut real estate was concerned. The court reviewed the evidence as to whether Rice established a good faith domicile in Nevada and held that he had not and was not entitled to maintain an action there for divorce. The question comes here as to whether this holding by Connecticut courts gave full faith and credit to the Nevada decree of divorce as required by the Constitution.

In *Williams* v. *North Carolina,* 317 U. S. 287, this Court rode roughshod over the precedents and held that a state court, without personal service of process on the defendant, can on short residence grant a divorce which is valid and entitled to faith and credit in all states. If Rice could have relied on that pronouncement, his divorce from Lillian and his marriage to Hermoine would be without legal flaw, and the latter's widowhood clear.

But in the second case of *Williams* v. *North Carolina,* 325 U. S. 226, the Court held that jurisdictional findings by the Nevada court in such a case do not preclude reexamination and a different conclusion on the part of another state. And in *Estin* v. *Estin,* 334 U. S. 541, the Court held that the second state is free to arrive at its own determination as to plaintiff's domicile in determining property rights, even though required, under the *Williams* cases or either of them, to recognize the divorce judgment as terminating the marriage. Now comes *Rice* v. *Rice* to demonstrate the consequences of these doctrines.

Congress, as it is empowered to do by the Full Faith and Credit Clause of the Constitution, has enacted that judgments "shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the

said records are or shall be taken." 1 Stat. 122. There is no doubt that under the law and usage of Nevada, Hermoine was wife and widow of Rice, and on its face the statute would seem to require that she be recognized as such elsewhere. But things sometimes are not what they seem.

In order to have anything which courts of the Western World recognize as a judgment, except in an action *in rem,* it is necessary that the rendering court have within its power both the party who seeks relief and the one against whom relief is sought.

This Court, while acknowledging that personal service of process on the defendant ordinarily is necessary to a valid judgment in a personal action, held in the first *Williams* case that a state could bring a nonresident defendant within its power merely by publication or out-of-state service of its summons. It overruled former decisions to introduce what it has aptly characterized in *Sherrer* v. *Sherrer,* 334 U. S. 343, 349 n. 11, and 356, as the "*ex parte* divorce." To me *ex parte* divorce is a concept as perverse and unrealistic as an *ex parte* marriage. The vice of the system sanctioned in *Williams* v. *North Carolina,* 317 U. S. 287, is that one of the parties may leave the state where both for years have made their home, seek a forum of his choice, and pretty much on his own terms alter the pattern of two lives without affording the other even a decent chance to be heard—as this case illustrates. Lillian either had to leave her teaching and means of support to follow her husband two thousand miles from any place where she ever had lived, or let her marriage go by default. If she chose to follow and contest under Nevada law, she had little real chance to succeed. But this Court had called this due process of law for Lillian.

Hermoine relied on the Nevada court, which did only what this Court authorized it to do—grant an *ex parte* divorce. She married a man whom this Court says Nevada had a right to make free by such process. She

had every right to believe her marriage complete and valid in all places and for all purposes. Certainly under the law of Nevada where she continued to reside it was valid, and this Court had held the out-of-state service sufficient to empower Nevada to take jurisdiction of Lillian for the purpose of dissolving her marriage. But now we say that Connecticut may find that Rice was not sufficiently domiciled in Nevada to give that State power to act on his complaint. This presents a study in contrasts.

We have said that Nevada does have power to dissolve the marriage of a woman who never was there in her life, never invoked its law or its courts, did not submit herself to its jurisdiction, refused to answer its summons, and took no benefits from its judgments.

On the other hand, we say that courts of any state may find that Nevada does not get power to dissolve the marriage of a man who went to that State and never came back, who invoked its law, went into its court and submitted himself to its jurisdiction, testified he was domiciled there, and during the rest of his life held quarters within that State.

But even under the two *Williams* cases, a quick Nevada divorce was either conclusive (first *Williams* case) or vulnerable (second *Williams* case) in its entirety. However, in addition to the rights grouped under the term *consortium,* which are terminated by divorce, there are subsidiary rights of a property nature such as support, alimony, distributive interests in personalty, dower and inheritance. These presented difficulties in case of the divorce on constructive service of process on a nonresident dependent in which there was no real chance to defend. So the Court improvised the concept of "divisible" divorce, *Estin* v. *Estin,* 334 U. S. 541, 549, a divorce good to end a marriage but invalid to affect dependent property rights.

I think that the judgment of the Connecticut court, but for the first *Williams* case and its progeny, might properly

have held that the Rice divorce decree was void for every purpose because it was rendered by a state court which never obtained jurisdiction of the nonresident defendant and which had no power to reach into another state and summon her before it.

But if we adhere to the holdings that the Nevada court had power over her for the purpose of blasting her marriage and opening the way to a successor, I do not see the justice of inventing a compensating confusion in the device of a divisible divorce by which the parties are half-bound and half-free and which permits Rice to have a wife who cannot become his widow and to leave a widow who was no longer his wife. Lillian's standing as the relict of Rice is invulnerable, while her standing as his wife could be blasted by a Nevada decree in an action to which she did not need to even become a party.

This Court is not responsible for all the contradictions and conflicts resulting from our federal system or from our crazy quilt of divorce laws, but we are certainly compounding those difficulties by repudiating the usual requirements of procedural due process in divorce cases and compensating for it by repudiating the Full Faith and Credit Clause. My dissenting views in the *Williams* and *Estin* cases would lead me to affirm the judgment below, because I believe this divorce was always and in all places invalid on due process grounds for want of jurisdiction of the defendant. However, if it was valid on that ground and nothing but a review of the evidence of domicile by the second state court is involved, we should not grant writs in this class of cases; but if I am to review the evidence here, I think the Nevada court's finding of jurisdiction was based on substantial evidence of domicile, not overcome by any new evidence before the Connecticut court, and the Nevada judgment should be given full faith and credit as the Congress has commanded.