Kathryn W. MEREDITH, Appellant,

v.

Richard H. MEREDITH, Appellee.

No. 11310.

United States Court of Appeals
District of Columbia Circuit.

Reargued March 29, 1955.

Decided July 7, 1955.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Charles F. O'Neall, Washington, D. C., with whom Mr. W. Byron Sorrell, Washington, D. C., was on the brief, for appellant.

Mr. Alvin L. Newmyer, Washington, D. C., with whom Mr. Alvin L. Newmyer, Jr., Washington, D. C., was on the brief, for appellee. Mr. Armand Newmyer, Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN and WILBUR K. MILLER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This case is before us after rehearing. On April 9, 1953, this court affirmed an order of the District Court which had dismissed a counter-claim of appellant wife for separate maintenance.[1] A petition for rehearing was filed. While that petition was pending the case of Hopson v. Hopson was heard by the court sitting *en banc*. On January 20, 1955, the opinion and decision of the court in the Hop-

---

1. Meredith v. Meredith, 204 F.2d 64.

son case was promulgated.[2] Rehearing was then ordered and held in the case at bar. The decision in Hopson makes necessary that the former decision in the present case be reversed.

In April, 1950, both Mr. and Mrs. Meredith were residents of the District of Columbia. The husband, in that month, filed a complaint for absolute divorce. Later that year he moved to dismiss his complaint, on the ground that he had moved to Texas and was no longer resident here. The court granted the motion but permitted the wife to file a counter-claim for separate maintenance. That counter-claim was filed September 1, 1950. Thus the situation at that point was that a claim for maintenance had been filed by the wife in an action brought by the husband in the District of Columbia while both parties were resident here.

In August, 1951, the husband filed a complaint for divorce in Texas and secured a decree there. The wife did not appear in the Texas proceeding, either personally or by attorney, and the decree made no mention of alimony or maintenance. Thereafter the wife's claim for maintenance, then pending in the District Court here, was tried and was dismissed on the ground that the Texas divorce decree had made the action moot.

The reasoning of Hopson v. Hopson can be stated quite simply. The Supreme Court has held in recent years that the contract of marriage is not a single, indivisible entity but embodies a bundle of rights which are divisible. These include the rights sometimes called "consortium" and also rights to maintenance, alimony, and the custody of children. The Court has held that the marital status as such and the rights of consortium can be terminated by a court which has jurisdiction over either of the parties.[3] Then the Court has held [4] that the right to maintenance is a personal financial right and [5] the right to custody of children is similar to it. But no court has power to deprive a person of a personal right unless it has jurisdiction over him. In Estin v. Estin the Court said: [6]

"But we are aware of no power which the State of domicile of the debtor has to determine the personal rights of the creditor in the intangible unless the creditor has been personally served or appears in the proceeding. The existence of any such power has been repeatedly denied. Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565]; Hart v. Sansom, 110 U.S. 151 [3 S.Ct. 586, 28 L.Ed. 101]; New York Life Ins. Co. v. Dunlevy, 241 U.S. 518 [36 S.Ct. 613, 60 L.Ed. 1140]."

Pennoyer v. Neff had established in 1878 that, where the object of an action is to determine personal rights and obligations of defendants, constructive service upon a nonresident is ineffectual for any purpose. There has been no departure from that rule.

Thus the Supreme Court has taught us that the mere marital status, as such, and the rights of consortium can be dissolved by a court having jurisdiction over the plaintiff spouse, but that personal rights of a financial nature, and the correspond-

2. 95 U.S.App.D.C. 285, 221 F.2d 839.

3. Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942) (frequently called the first Williams case).

4. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948).

5. May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953).

6. Supra note 4, 334 U.S. at page 548, 68 S. Ct. at page 1218. It is interesting to note parenthetically that, contrary to some views since expressed, the conclusion in Estin v. Estin was not premised upon some peculiar nature of the judgment in the New York courts but proceeded from the premise that the New York judgment was a property interest and that jurisdiction over such an interest can "only arise from control or power over the persons whose relationships are the source of the rights and obligations." Ibid. Thus the core of Estin v. Estin is jurisdiction over intangible property rights, not some peculiar characteristic of a judgment.

ing obligations thereunder, can be adjudicated only by a court having jurisdiction over the defendant. To understand the rules resulting from this series of cases one has only to read the vivid and vigorous dissent of Mr. Justice Jackson in Rice v. Rice.[7]

In Hopson v. Hopson we merely applied the principles of the Supreme Court cases above referred to. We must do the same here. It follows that the Texas decree, even though valid as to the marital status of the Merediths and the consortium rights of both spouses, could not destroy Mrs. Meredith's right to claim maintenance, a financial right. Her claim to maintenance was filed in the District of Columbia in an action in which the court here had jurisdiction over the husband because he had brought the action. The Texas court had no jurisdiction over the wife and so could not deprive her of this financial right. It was therefore error for the District Court to dismiss the claim to maintenance as moot because of the Texas decree.

Sometimes, obviously, the fact that a plaintiff woman is, or is not, presently the wife of the defendant man may be among the equitable considerations which are relevant and material to the issue of maintenance. For example, a long delay in bringing the action may present one problem if the woman is still the wife and another problem if she has not been the wife for the years of the delay; and circumstances attending a prior divorce action—for example, the wife's knowledge, acquiescence, conduct, etc.—may bear upon her later claim to equitable relief. And so in some circumstances the validity of a prior divorce may be among the pertinent equitable considerations upon the trial of an action for maintenance. Hopson so teaches but warns that such collateral attacks upon divorces ought not to be permitted unless necessary. In the case at bar Mrs. Meredith's claim was filed before her husband's action in Texas was filed and while she was his wife. Whether the Texas divorce was valid or invalid would thus appear to be immaterial to her claim to maintenance; the circumstances surrounding the divorce, her course of action in regard to it, etc., may be material to her claims upon equity.

There is in the District of Columbia a statute [8] which provides in effect that any "husband" who fails to provide maintenance may be ordered to pay it. The statute is mentioned in many opinions in this field. It is sometimes argued that when a man is not a "husband" he has no obligation to support his wife or children. The point is not pertinent here, because Mr. Meredith was the husband when the claim to maintenance was filed against him. But we point out again, as we did in the former opinion in this case, that this court has long and many times held that equity will compel a father to support his children and his wife quite apart from apparent restrictions in the statute. In our former opinion in this case we cited cases from 1893, 1903 and 1917 down to 1944 and 1953. Hopson held to that view, and we continue to adhere to it.

Reversed and remanded for further proceedings in accordance with this opinion.

WILBUR K. MILLER, Circuit Judge (dissenting).

This litigation began August 7, 1948, when Dr. Richard H. Meredith sued in the United States District Court for the District of Columbia for a limited divorce. He also prayed that his wife be restrained and enjoined from threatening, harassing and interfering with him. The District Court found on September 30, 1948, following a hearing, that after the complaint was filed Mrs. Meredith had threatened her husband and his mother and sister with bodily harm and had harassed him in his professional practice; accordingly a preliminary in-

---

7. 336 U.S. 674, 676, 69 S.Ct. 751, 93 L. Ed. 957 (1949).

8. 31 Stat. 1346 (1901), as amended, D.C. Code 1951, § 16–415.

260

junction was issued against the continuance of such conduct. A consent order for monthly alimony pendente lite in the sum of $200 was entered October 29, 1949, and the allowance was later reduced to $100.

April 6, 1950, Meredith amended his complaint, seeking an absolute divorce on the ground of desertion for two years. About the first of July, 1950, he removed to San Antonio, Texas, where he still resides, as far as I know. Apparently because of that removal, Dr. Meredith filed a motion in the District Court here July 13, 1950, to dismiss "the above cause without prejudice pursuant to Rule 41 (a) (2) of the Federal Rules of Civil Procedure." The motion was granted August 21, 1950, with leave to Mrs. Meredith to file within 20 days "a counter-claim in the above captioned action for separate maintenance * * *"[1]

Thus the District Court apparently dismissed the action and yet provided that thereafter a counter-claim might be filed. I do not believe such procedure is authorized by Rule 41(a) (2), 28 U.S.C.A. The result is that Mrs. Meredith's counter-claim for separate maintenance filed September 1, 1950, was filed in an action which had theretofore been dismissed. Perhaps the filing of the so-called counter-claim may properly be regarded as the institution of an independent action for separate maintenance. Without pressing the procedural point, I shall discuss the case as though the District

Court actually had before it a claim for separate maintenance.

When the purported counter-claim came on for final hearing in the District Court October 3, 1951, Dr. Meredith filed a certified copy of a decree of absolute divorce which had been granted him by a Texas court August 27, 1951, more than a year after he had established his residence in San Antonio. Because of the Texas divorce, Judge Holtzoff held the District Court here had no jurisdiction to grant separate maintenance and dismissed the claim therefor. This appeal is from that ruling.

In reversing, this court holds that, despite the undoubted jurisdiction of the Texas court and the consequent validity of its decree, the District Court here may subsequently award separate maintenance to the former wife on her claim thereto, which may have been pending but certainly had not been adjudicated when the foreign divorce was granted. The court necessarily implies that the allowance of maintenance in such circumstances does not violate the full faith and credit clause and is consistent with the public policy of the District of Columbia. The holding is contrary to our decisions in the Thompson and Gullet cases,[2] and is not sustained by the authorities cited to support it, as I shall show. Moreover, it goes beyond § 16-415, D.C.Code 1951,[3] which has been described by this court as a statutory statement of the pre-existing inherent power of a court of equity

1. The order of August 21, 1950, was "that the plaintiff's motion to dismiss the complaint for a limited divorce be and it is hereby granted * * *." This order seems to have been regarded by the parties as a dismissal of the action and is so described in the majority opinion.

2. Thompson v. Thompson, 1910, 35 App. D.C. 14, affirmed 1913, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347; Gullet v. Gullet, 1945, 80 U.S.App.D.C. 73, 149 F.2d 17. In the second Gullet decision, 1949, 85 U.S.App.D.C. 12, 174 F.2d 531, we affirmed an allowance of maintenance because, on remand, the District Court found on sufficient evidence that the foreign court which granted divorce lacked jurisdiction.

3. Section 16-415 is as follows:
"Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony. (Mar. 3, 1901, 31 Stat. 1346, ch. 854, § 980; June 20, 1949, 63 Stat. 213, ch. 228.)"

to grant separate maintenance without divorce,[4] and which is declaratory of local public policy.

Their holding, the majority say, is required by Hopson v. Hopson, decided by this court January 20, 1955. There the court did indeed hold that under its general equity power the District Court may allow separate maintenance after an *ex parte* foreign divorce, without violating the full faith and credit clause and without offending against local public policy.[5] So, if the Hopson opinion is to be regarded as authoritative, it governs the present case. But this court did not have before it in Hopson v. Hopson the question whether our District Court may award maintenance after a valid foreign *ex parte* decree has terminated the marital status; in that case the foreign decree had been held invalid by the District Court.

The Hopson case presented a simple question which should have been simply answered. Mrs. Hopson sought separate maintenance in the District of Columbia and Hopson pleaded an *ex parte* judgment of divorce obtained by him in Florida in bar of her right to recover. The District Court examined the jurisdiction of the Florida court, as permitted by the second Williams case,[6] found as a fact that Hopson had not acquired a domicile in Florida, and concluded the divorce decree was therefore invalid. Having so concluded, the District Court proceeded to award maintenance. Hopson appealed, urging the court here had not extended full faith and credit to the Florida judgment. The only question before this court[7] was whether the District Court had correctly concluded the Florida court

lacked jurisdiction, a question which in turn depended upon the correctness of the factual finding concerning domicile.

Since that finding was supported by substantial evidence, it was not clearly erroneous but was one which Rule 52(a) declares "shall not be set aside." Nor was it set aside on appeal, and neither was the judgment of the District Court reversed, modified or set aside. In those circumstances, I think the appellate duty was to affirm and that appellate power went no further. Instead of doing that, this court remanded for "redecision," telling the trial court to close its eyes to the obvious infirmity in the Florida judgment, unless it were unable to find a way to grant maintenance under the newly announced principle.

It seems to me to be clear that this court had no power to go beyond the issue presented in the Hopson case and to decide a question which was not before it by saying that an unadjudicated claim for maintenance survives a *valid* foreign divorce. I think the pronouncements of the Hopson opinion were wholly unnecessary to the decision and were *dicta* which have no precedential effect. In Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, 19 U.S. 264, 398, 5 L.Ed. 257, Chief Justice Marshall said of *dicta*[8] which he confessed he had written in Marbury v. Madison, 1803, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60:

" * * * It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to con-

---

4. Lesh v. Lesh, 1903, 21 App.D.C. 475.

5. The obvious reference was to a *valid* foreign judgment because the Hopson opinion, after stating that an unadjudicated claim for maintenance survives a foreign *ex parte* divorce decree, said, [221 F.2d 847] "It follows that there may be no necessity for a frontal attack upon the validity of the foreign *ex parte* divorce * * *." The opinion concludes thus: "If in fact and in

law the foreign decree is invalid, the District Court is free so to decide, but only if it must."

6. Williams v. State of North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577.

7. Aside from the suggestion of *forum non conveniens*.

8. Of the sort which is sometimes called "judicial" instead of *obiter*.

trol the judgment in a subsequent suit, when the very point is presented for decision. * * * "

In the course of their opinion, my brothers cite and rely upon Williams v. State of North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279; Estin v. Estin, 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561; Rice v. Rice, 1949, 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957; and May v. Anderson, 1953, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221. None of these cases is direct authority for the majority's decision, because none considered the question which is in the case before us.

The holding of the first Williams case was succinctly described in the second, 325 U.S. at page 227, 65 S.Ct. at page 1094, as being

> " * * * that a divorce granted by Nevada, on a finding that one spouse was domiciled in Nevada, must be respected in North Carolina, where Nevada's finding of domicil was not questioned, though the other spouse had neither appeared nor been served with process in Nevada and though recognition of such a divorce offended the policy of North Carolina. * * * "

Manifestly, the Supreme Court did not have before it in the first Williams case the question whether an unadjudicated claim for separate maintenance survives a valid ex parte foreign divorce decree.

The holding of Estin v. Estin was thus described by the Supreme Court in a later case:[9]

> " * * * [T]his Court upheld the validity of a Nevada divorce obtained ex parte by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under *the prior decree of another state. * * * "* [My emphasis.]

Hence the Estin case did not involve our question, which is whether a valid foreign divorce prevents our District Court from *subsequently* granting separate maintenance to the former wife.

Rice v. Rice falls far short of supporting the court's conclusion here. The question in that case was whether the courts of Connecticut had given full faith and credit to a Nevada divorce decree which had been obtained *ex parte* by a husband who went to that state, leaving his wife in Connecticut. After the Nevada divorce Rice married another woman and subsequently died. The first wife sued in Connecticut for a declaratory judgment that the Nevada divorce was not entitled to full faith and credit because Rice was not domiciled in that state when the decree was entered. The Connecticut courts held Rice had never established a *bona fide* domicile in Nevada and the Supreme Court affirmed, saying that, as the first wife had not been personally served and did not in any way participate in the Nevada proceedings, "She was not, therefore, precluded in the present action from challenging the finding of the Nevada court that Herbert N. Rice was, at the time of the divorce, domiciled in that state." 336 U.S. at page 676, 69 S.Ct. at page 752.

May v. Anderson does not seem to me to support the majority's position. There the Supreme Court did not have before it the question whether a valid divorce decree obtained ex parte by a husband prevents another state from subsequently awarding separate maintenance to the former wife. Rather it had "the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam*." 345 U.S. at page 533, 73 S.Ct. at page 843. Over the dissent of three justices, the Court recognized that a mother's right to custody

9. May v. Anderson, 1953, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221.

of her children is a personal right which cannot be taken from her by a foreign divorce and custody decree obtained *ex parte* by her husband. While the divisibility doctrine was mentioned by way of comparison, the decision rested upon the mother's natural personal right, which Mr. Justice Jackson described in his dissent as a "cardiac consideration." 345 U.S. at page 540, 73 S.Ct. at page 847.

So, in none of the cases cited in the majority opinion did the Supreme Court expressly hold that a state may allow maintenance in disregard of a valid *ex parte* divorce previously granted in another state. Even had it so held, or if it should do so hereafter under the divisibility doctrine, I take it the holding would merely permit the allowance of maintenance in such circumstances despite the full faith and credit clause, but that it would not require the allowance. Any state would still be free, I suppose, to determine its own public policy and to extend full faith and credit to the *ex parte* divorce decree of a sister state if it chose to do so.

With respect to local public policy, the majority say

"* * * that this court has long and many times held that equity will compel a father to support his children and his wife quite apart from apparent restrictions in the statute. In our former opinion in this case we cited cases from 1893, 1903, and 1917 down to 1944 and 1953. Hopson held to that view, and we continue to adhere to it."

There is no restriction, apparent or real, in § 16–415 of the Code. The section does not restrict the power of equity to award maintenance. It is a legislative definition and declaration of that power in accordance with repeated decisions of this court prior to its enactment. The cases from 1893 to 1953 to which the court refers all dealt with situations where a wife was seeking maintenance from her husband but not divorce. In all the cases the marital status existed.

The power of equity with respect to maintenance was first announced in Tolman v. Tolman, 1893, 1 App.D.C. 299, which was a suit brought by a *wife* to obtain maintenance from her *husband*. The court held that, although no divorce was sought, the District Court had power in the exercise of its equity jurisdiction to grant maintenance. But it expressly pointed out that the grant was based upon the existence of the marital status. The court said, at page 311:

"* * * This is not an application for a divorce, but for maintenance, *founded upon the continued relation of husband and wife*, and to continue only so long as the husband may think proper to live separate from his wife, and refuse or neglect to discharge his marital obligations. * * * " [My emphasis.]

Lesh v. Lesh, 1903, 21 App.D.C. 475, was decided after the enactment of what is now § 16–415 of the Code. It also was a suit for maintenance only, brought by a wife against a husband, and the appeal was from the order allowing pendente lite maintenance. The husband argued that, as the newly enacted Code provision authorized permanent maintenance only, a pendente lite allowance could not be made. This court upheld the order, however, on the authority of Tolman v. Tolman, and significantly said, at page 488:
"* * * [W]e regard section 980 of the code as the enunciation in legislative and statutory form of the judicial principles of equity announced in the case of Tolman v. Tolman." [10]

So it has been through all the cases from 1893 to 1953. This court had never

10. Section 16–415 was amended in 1949 by the addition of the words *"pendente lite* and permanently." This was done to make the section conform with several decisions which had noted the absence of the *pendente lite* provision but had held the power existed. This amendment confirms the fact that the section is declaratory of the general power of a court of equity.

intimated that public policy permits the grant of maintenance after divorce until Hopson v. Hopson was decided. The majority follow that decision in this respect just as they do with regard to the full faith and credit question. Again their reliance is misplaced.

On public policy, the Hopson opinion says:

"In fixing a rigid rule, we took the position [in the first opinion in the present case] that § 16–415 of the D.C.Code expressed local public policy against the award of maintenance once a divorce decree has become effective. That section states: 'Whenever any husband shall fail * * * to maintain his wife * * * the court, on application of the wife' may order him to pay as maintenance such sums as would be allowed 'in case of divorce.' We thought this position supported by our decision in Rapeer v. Colpoys [1936, 66 App.D.C. 216, 85 F.2d 715], wherein we expressed the view that once the parties are divorced, they are no longer 'husband' and 'wife' within the meaning of the maintenance statute. But we are now convinced, and so hold, that the court has general equity powers, which are not supplanted by the statute, and which are broad enough in appropriate circumstances to support a grant of maintenance after an ex parte divorce."

Curiously enough, the Hopson opinion mentions Tolman v. Tolman and Lesh v. Lesh as supporting its holding "that the court has general equity powers, which are not supplanted by the statute, and which are broad enough in appropriate circumstances to support a grant of maintenance after an ex parte divorce." I have already shown that the statute did not supplant, but rather defined, the power of equity in accordance with this court's definition thereof, and that the cases do not hold the power to be broader than that declared by the Code provision.

The conclusion is inevitable, it seems to me, that local public policy is against the award of maintenance once a divorce decree has become effective. An action for separate maintenance cannot be maintained after the marital status has been dissolved. The divisibility doctrine does not militate against my conclusion, because it can have no impact on local public policy. When the Supreme Court said a foreign ex parte divorce does not cut off the wife's right to financial support, it meant of course that the foreign decree does not destroy any right she may have to support under the law of the place where she subsequently seeks maintenance. If, as in this jurisdiction, she has no such right, the divisibility doctrine cannot be said to create one.

It may be said that, because a majority of this court sitting en banc concurred in Hopson v. Hopson, the dicta of that opinion should rule this case where the question actually is presented. I do not think we should assume that the full bench would perpetuate error when actually confronted with the question, and I indulge the hope that some of my brethren of the Hopson majority will, upon occasion, change their views.